In re the MARRIAGE OF Susan Ann WENDELL and Jeffrey Alfred Wendell.

Upon the Petition of Susan Ann Wendell, Appellee,

And Concerning Jeffrey Alfred Wendell, Appellant.

No. 97–863.

Court of Appeals of Iowa.

April 24, 1998.

Arthur L. Buzzell, Davenport, for appellant.

M. Leanne Tyler of Soper & Tyler, Davenport, for appellee.

Heard by CADY, C.J., and HUITINK, and STREIT, JJ., but decided en banc.

CADY, Chief Judge.

Jeffrey Wendell appeals from the economic provisions of the district court's dissolution decree. He claims the trial court failed to reach an equitable distribution of the marital assets and failed to provide appropriate terms for the termination of alimony. We affirm.

Jeffrey and Susan Wendell married on October 22, 1985. After slightly over eleven years of marriage, the parties divorced on January 22, 1997. At the time of dissolution, Jeffrey was thirty-nine years of age and Susan was thirty-three years old. The parties have one child, Jedediah, born May 3, 1986.

Jeffrey brought to the marriage various personal property and bank accounts valued at $17,281. The trial court awarded Susan net assets in the amount of approximately $178,402, while Jeffrey received net assets totaling approximately $178,403. The district court also ordered Jeffrey to pay Susan rehabilitative alimony of $700 per month for a period of five years. The decree provided the alimony payments would terminate either upon the death of either party or the remarriage of Susan.

On appeal Jeffrey claims the trial court erred by ruling his premarital assets had been converted to marital assets and were subject to division. He also asserts the district court erred by failing to provide for termination of alimony in the event of Susan's cohabitation or employment.

## I. Standard of Review

We review this equitable matter de novo. Iowa R.App. P. 4. This requires us to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Ruter*, 564 N.W.2d 849, 851 (Iowa App.1997). At the same time, we recognize the value in listening to and observing the parties and witnesses. Iowa R.App. P. 14(f)(7). Consequently, we give weight to the findings of the trial court, although they are not binding. *Id.*

## II. Premarital Assets

The partners to a marriage are entitled to a just and equitable share of property accumulated through their joint efforts. *See In re Marriage of Gonzalez,* 561 N.W.2d 94, 98 (Iowa App.1997); *see also In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). The Iowa courts do not require an equal division or a percentage division in determining a just and equitable share of property. *Gonzalez,* 561 N.W.2d at 98. Instead, each particular circumstance determines what is fair and equitable. *Id.* Further, the property distribution should be made pursuant to the criteria codified in Iowa Code section 598.21(1) (1995). *Id.*

Property which a party brings into the marriage is a *factor* to consider in making an equitable division. Iowa Code § 598.21(1)(b). In some instances, this factor may justify a full credit, but it is not required. *In re Marriage of Miller,* 552 N.W.2d 460, 465 (Iowa App.1996). A premarital asset is not otherwise set aside like gifted or inherited property. *Id.* Moreover, in considering accumulations to premarital assets, we do not limit our focus to the parties' direct contributions to the increase. *Id.* Rather, we broadly consider the contributions of each party to the overall marriage, as well as all other factors. Iowa Code § 598.21(1). Financial matters make up only a portion of a marriage, and must not be emphasized over other contributions in determining an equitable contribution. *Miller,* 552 N.W.2d at 465.

Premarital property does not merge with and become marital property simply by virtue of the marriage. *See In re Marriage of Miller,* 452 N.W.2d 622, 624 (Iowa App. 1989) (the purpose of section 598.21(1)(b) is prevention of one spouse from obtaining an interest in property for which he or she made no contribution to acquiring). In making our decision, we must therefore recognize property a party brings into the marriage as a factor in making an equitable division. *See* Iowa Code § 598.21(1)(b).

In its decision on Jeffrey's motion to enlarge, the district court determined Jeffrey's premarital accounts were converted to marital funds during the marriage and were used for marital purposes. Jeffrey claims the $17,281 he brought to the marriage was not used for marital purposes. He maintains the assets of the parties grew during the marriage, and no evidence exists his accounts were consumed for marital purposes. He contends the district court should have set aside the $17,281 to him to achieve an equitable division of property.

We have considered Jeffrey's premarital property on our de novo review of the record. In this case, there is evidence Jeffrey dissipated $19,000 in marital assets during the time of dissolution. This diminishes the impact of his premarital assets in the overall division of assets. *See In re Marriage of Burgess,* 568 N.W.2d 827, 828 (Iowa App. 1997) (waste of marital assets by spouse prior to dissolution of marriage can be considered in making property distribution). Considering all these circumstances, we agree with the division of property made by the trial court.

## III. Alimony

Jeffrey maintains alimony should terminate in the event Susan becomes self-sufficient following employment or if she cohabits. The district court limited early termination of the five-year alimony to death or remarriage by Susan. The district court specifically rejected Jeffrey's claims that alimony should also terminate upon self sufficiency or cohabitation.

It is common in Iowa for alimony provisions in a decree for dissolution of marriage to include conditions providing for alimony to automatically terminate prior to the specific duration upon death or remarriage of the recipient spouse. This practice results, most likely, from two related principles. First, alimony is presumed to automatically terminate upon the death of the recipient spouse. *In re Marriage of Smith,* 573 N.W.2d 924, 927 (Iowa 1998). Second, although subsequent remarriage does not automatically terminate an alimony obligation, it does shift the burden to the recipient to show "extraordinary circumstances" to justify its continuation. *In re Marriage of Shima,* 360 N.W.2d 827, 828 (Iowa 1985). Consequently,

in many instances, this heavy burden effectively eliminates alimony following remarriage. This result comports with the underlying rationale for the shift of the burden of proof. Generally, it is contrary to public policy to permit a person to be concurrently supported by a spouse and a former spouse. *Id.; In re Marriage of Cooper,* 451 N.W.2d 507, 509 ( Iowa App.1989). Marriage, traditionally, imposes a reciprocal obligation of support on each spouse, and remarriage following divorce correspondingly releases a former spouse from any continuing traditional obligation of support. *See Shima,* 360 N.W.2d at 828 (spouse may abandon alimony provisions in a dissolution decree by remarriage).

The convergence of these two principles helps explain the prevailing judicial practice of adjudicating the termination of alimony upon death or remarriage at the time of the original decree for dissolution of marriage instead of leaving the issue for future litigation framed by the presumption and shifting burden. Further litigation can be avoided by simply deciding the issue up-front. We must decide if cohabitation and self sufficiency should similarly be included.

In considering whether it is appropriate to include cohabitation as a condition causing termination of alimony, we acknowledge cohabitation may have many of the attributes of a marriage relationship. Thus, the same rationale which explains the termination of alimony upon remarriage may also apply to cohabitation. In the past, this has motivated us to include cohabitation in some cases as an event to terminate alimony. *See In re Marriage of Bell,* 576 N.W.2d 618 (Iowa App. 1998). This case gives us an opportunity to reconsider this practice.

■ We begin by recognizing that even remarriage may not always be an appropriate triggering event for the termination of alimony. In some cases, it is appropriate to continue alimony after the remarriage of the recipient spouse. Generally, whether remarriage terminates alimony depends, primarily, on the purpose behind the award of alimony. Rehabilitative and reimbursement alimony, for example, are often unaffected by remarriage. *See In re Marriage of Francis,* 442

N.W.2d 59, 67 (Iowa 1989) (reimbursement alimony not subject to modification or termination until full compensation except upon recipient's death); *In re Marriage of Seidenfeld,* 241 N.W.2d 881, 884 (Iowa 1976) (alimony payments to wife for the purpose of further education should continue even if wife remarries); *see also In re Marriage of Wilson,* 449 N.W.2d 890, 893 (Iowa App.1989) (retirement benefits distributed in the form of alimony do not terminate on remarriage of recipient).

Although remarriage may not always trigger the termination of alimony, it nevertheless remains a viable issue for determination at the time of the original decree. This is because the purpose of the alimony is known at the time the decree is entered, and the triggering event, remarriage, is readily identifiable.

■ Unlike remarriage, cohabitation is not an easily identifiable triggering event. It may be compatible with remarriage when cohabitants live together and assume various responsibilities towards each other. Yet, cohabitation has too many variables to be a defined future event, like remarriage, in a dissolution decree. Thus, we believe it would be inappropriate to use cohabitation as an event to automatically terminate alimony in an original dissolution decree. The question is better reserved for resolution in an action to modify the decree for dissolution of marriage.

Jeffrey claims cohabitation could be viewed as an event within the contemplation of the trial court at the time of the original decree and outside the scope of a modification action. *See In re Marriage of Carlson,* 338 N.W.2d 136, 141 (Iowa 1983) (event to support modification must be outside contemplation of trial court). He fears he will be precluded from litigation of the issue in the future.

■ We observe our decision today will generally foreclose an adjudication of the cohabitation issue at the time of the original decree. Although we have tied cohabitation to remarriage in the past, we will no longer use cohabitation as an event to terminate alimony. For this reason, it would not be

outside the scope of a modification proceeding.[1]

 Like cohabitation, we believe events such as employment and self-sufficiency should also be reserved for a modification action. The imposition and length of an award of traditional alimony is primarily predicated on need and ability. *See In re Marriage of Kurtt*, 561 N.W.2d 385, 387 (Iowa App.1997). If circumstances later arise to eliminate need prior to the time frame anticipated when the original decree was entered, modification may be sought. *See* Iowa Code § 598.21(8)(a) (dissolution decree can be modified upon a showing of a substantial change in circumstances, including changes in employment or earning capacity); *In re Marriage of Romanelli*, 570 N.W.2d 761, 764 (Iowa 1997) (husband petitioned for modification of alimony based on wife's full-time employment).

## IV. Attorney Fees

 An award of appellate attorney fees is not a matter of right, but rests in our discretion. *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa App.1997). In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal. *Id.*

Considering Susan's need and both parties' ability to pay, we find Jeffrey should contribute $1200 for Susan's appellate attorney fees.

**AFFIRMED.**

All judges concur, except SACKETT, J. and HUITINK, J., who specially concur.

SACKETT, Judge (specially concurring).

The majority's struggle to determine whether and when cohabitation should terminate alimony[2] or "how much sex is enough,"[3] ending with a determination that its conclusion "strikes an appropriate balance between the interest of the parties ... consistent with our prevailing companion principles and the underlying policy of the law," is outstanding rhetoric but does little to provide definite guidelines or address the current application of age-old principles stemming from a time when the husband was the wage earner, a woman's worth was determined by home-type jobs, and when our supreme court said, "Alimony is an allowance for maintenance of the wife." *Russell v. Russell*, 4 Greene 26, 29 (Iowa 1853). In those times, a husband need only support his former wife, a being suited for domestic chores, until another man in the form of a husband, and sometimes a lover, came along.

While statutes providing alimony only to women have been found unconstitutional, *Orr v. Orr*, 440 U.S. 268, 278–79, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306, 318–19 (1979), the fact is alimony awards to men remain rare.[4] Obviously, in some part, it is the result of

---

1. A remaining issue, not before us at this time, is whether, like the general rule applicable to remarriage, the burden should shift to the recipient of the alimony to establish either the cohabitation is distinguishable from a marriage relationship or extraordinary circumstances justify its continuance. *See* 29 Am.Jur.2d, Evidence § 161 (1994) (when information necessary to prove an issue is peculiarly or exclusively in the possession of one party, convenience and fairness may justify placing the burden of proving these facts upon the party).

A shift in the burden of proof for cohabitation would appear consistent with our companion principles relating to remarriage and the underlying policy of the law. However, we decline to decide the issue. We also note, unlike a decree which terminates alimony upon remarriage, there will be no prompt, automatic relief for the

parties in the event of cohabitation. Moreover, temporary orders could be sought in appropriate cases to suspend alimony pending a final disposition of the case.

2. Though as courts we continue to use the word "alimony," that word disappeared from Iowa statutory law in 1980 and is now statutorily termed "spousal support." Iowa Code § 598.21(3).

3. This court, in *In re Marriage of Orgren*, 375 N.W.2d 710, 713 (Iowa App.1985), has already said, "We do not believe that cohabitation is a ground for automatic denial or limitation of alimony payments."

4. *See In re Marriage of Miller*, 524 N.W.2d 442, 445 (Iowa App.1994); *In re Marriage of Bethke*, 484 N.W.2d 604, 608–09 (Iowa App.1992).

**202**

continuing attitudes men should support their families, and it is justified by continuing wage differentials between men and women.

Aged principles, long out-dated by the entry of women in the work place, should be totally discarded in favor of principles gauged on fairness and not sexual or marital status or so-called balancing considerations that are driven by uncertainty and serve to advance additional litigation following a dissolution and threaten the financial stability of the divorced parties.

Society would be best served by resolving the economic issues in a dissolution by division of property and pension rights,[5] giving finality to the parties and curtailing substantial future litigation. Alimony should be awarded primarily in those cases where the only source for equitable division is from the future income of the advantaged spouse. Modifications should be limited to situations where the disadvantaged spouse's income substantially decreases through no fault of their own. In accordance with existing trends, alimony should be limited to situations where one spouse has sacrificed his or her own career opportunities by assuming responsibility for home and family, while recognizing a former marital partner should not, in most cases, be a life-long meal ticket.

If such is the case, what makes sacrifices made in a marriage less compensable because the disadvantaged spouse elects to marry or just have sex. I suggest nothing should. Our supreme court has recently recognized there are limited instances where alimony should not terminate on remarriage, establishing what is referred to as "reimbursement alimony." [6]

Until we are ready to discard the trappings of traditional concepts of spousal support and assess it under the facts of current society, we can only continue to engage in confusing rhetoric and continue to leave divorced persons with substantial uncertainty as to their economic futures.

HUITINK, Judge (specially concurring).

I concur in the result only.

---

5. The earlier inability of courts to divide pension rights have, in most cases, been erased. *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996); *In re Marriage of Kurtt*, 561 N.W.2d 385, 388–89 (Iowa App.1997); *In re Marriage of Robison*, 542 N.W.2d 4, 5 (Iowa App.1995).

6. *In re Marriage of Smith*, 573 N.W:2d 924, 926–27 (Iowa 1998); *In re Marriage of Francis;* 442 N.W.2d 59, 63 (Iowa 1989).