# IN THE COURT OF APPEALS OF IOWA

No. 19-1268
Filed July 22, 2020

IN RE THE MARRIAGE OF TAD WHEELER
AND VERNA WHEELER

Upon the Petition of
TAD WHEELER,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
VERNA WHEELER,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Wapello County, Crystal S. Cronk,

Judge.

        The petitioner appeals from the dissolution decree, challenging the

determination of his income for purposes of child support, the division of property,

and the award of attorney fees to his former wife.  He asks for appellate attorney

fees.  The respondent cross-appeals, challenging the division of property and the

resulting equalization payment and asking for appellate attorney fees.  **AFFIRMED**

**AS MODIFIED ON BOTH APPEALS.**

        Danni J. Harris of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

        Heather M. Simplot of Harrison, Moreland, Webber, Simplot & Maxwell,

P.C., Ottumwa, for appellee.

        Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Tad Wheeler appeals from the decree dissolving his marriage to Verna Wheeler. Tad challenges the district court's property division, the determination of his income for purposes of the child-support obligation, and the award of attorney fees to Verna. He asks us to order Verna to pay his appellate attorney fees of $27,775. On cross-appeal, Verna challenges the division of property and the resulting equalization payment and asks for appellate attorney fees of $10,125.

### I. Background Facts and Proceedings.

Tad and Verna married in June 2013, when Tad was forty-one and Verna was twenty-three years old. At the time of their marriage, the parties had been living together for about two and a half years and already had one child. Tad and Verna had three more children before Tad filed for dissolution in September 2017.[1] The dissolution hearing took place over two days in February 2019.

When she moved in with Tad in January 2011, Verna had few assets. At that time, Verna had recently crashed her car and received an insurance payout of $3000 or $4000, but she otherwise did not own any property. With some schooling under her belt before the marriage, Verna then completed her teaching degree using partial scholarships while they lived together and, at the time of dissolution, was teaching full-time at a local school. The couple were engaged for over two years so Verna could access the scholarships available to single mothers. She earns $44,677 annually.

---

[1] One of the children died in 2014. At the time of dissolution, Tad and Verna stipulated to sharing joint legal custody and joint physical care of their three other children; that is not an issue on appeal.

Without question Tad was more financially established than Verna at the start of their relationship. He was self-employed, farming land he owned and working at his own archery business. Since 2000, he owned his business, which included land, a building, and inventory.[2] Additionally, in 2002, Tad bought a 149-acre parcel of land for $110,000. He made improvements to that land, including building a small metal building. He also built a home there in 2008, used as the marital residence, although it is not clear how finished it was when Verna moved in to the home. Both Tad and Verna testified about projects they completed within the home throughout their marriage, including finishing at least one bathroom, the fireplace, and working on finishing the basement.

In October 2012, Tad executed a contract to purchase the "Edel" tract—a forty-acre piece of land for which he agreed to pay $80,000. Tad paid $20,000 when he signed the contract and then made additional $20,000 payments in 2013, 2014, and 2015. The deed of the land transferred to Tad—in his name only—in 2015, during the parties' marriage.

In May 2016, Tad bought a 110-acre parcel, the "Copperhead" farm, for $290,000. Only Tad's name appeared on the real estate deed although both Tad and Verna were on the mortgage. The evidence introduced at trial, a September 2018 statement, showed around $164,500 remaining as mortgage debt.

Before trial, Tad and Verna stipulated to several issues. They agreed Tad would keep the land and that an auction of certain machinery and equipment would

---

[2] Tad originally had a partner in the business, which was then called Whitetail Archery. After that partnership dissolved in 2012, the deed transferred solely to Tad, who then transferred the title to Whitetail Outdoors, LLC.

occur with the proceeds split between them in some way. They asked the court to decide how much money, if any, Verna should receive to offset the value in the various properties Tad would be keeping, including the business, and how the proceeds from the auction should be split. The court was also asked to determine Tad's income for purposes of child support.

To start the analysis, Tad maintained his annual income was approximately $40,000. And he asked the court to award him the total value of the marital residence, the business, and the "Edel" parcel. As for the Copperhead parcel, Tad asked the court to split in half the equity in that property at the time Tad filed for dissolution, giving Verna half of $116,000 or $58,000. He also requested the first $26,000 from the auction proceeds as a credit for items he owned before the parties married, with the rest of the proceeds split equally between the two.

Verna claimed the court should find Tad's annual income to be $122,623. She acknowledged this was more than Tad's farming and business receipts showed, but she maintained that Tad had always done a lot of business in cash that was not being reported. She testified about the large amounts of cash Tad kept on hand in their home, sometimes more than $50,000. She pointed out that Tad bought a skid loader for nearly $40,000 in cash during their marriage and also, at one point, decided to make a $50,000 payment on the mortgage for the Copperhead property. Verna asked the court to divide equally the value of all of their assets, which, based on her figures, would require Tad to make an

equalization payment to her in the amount of $763,475.40.[3] She also asked that Tad pay her attorney fees.

The district court found credible Verna's testimony "that the business did not always report cash income, that the family expenses were often paid in cash, and the family enjoyed a very comfortable standard of living" and concluded, "This lifestyle and relative low debt would not have been possible on the meager income Tad reported." The court determined Tad's annual income was $119,882. The court set aside the value of Tad's business without awarding Verna any offsetting payment, but it awarded her half the value of the other three properties at the time of the dissolution hearing minus the $110,000 Tad spent purchasing the marital property in 2002. As a result, the court ordered Tad to pay Verna an equalization payment of $372,169 at the rate of $5000 per month. Tad was not given a credit toward the items to be auctioned, and the court ordered the parties to split those proceeds equally. Based on Tad's income of $119,882, he was ordered to pay child support in the amount of $1086.62 per month. Tad was also ordered to pay $6000 of Verna's attorney fees.

Tad appeals, and Verna cross-appeals.

## II. Standard of Review.

A trial involving the dissolution of a marriage is an equitable proceeding. Iowa Code § 598.3 (2017). As a result, our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). While we give weight to the factual determinations made by the district court, its

---

[3] This amount included the machinery and items the parties ultimately agreed would be auctioned.

findings are not binding upon us. Iowa R. App. P. 6.904(3)(g). That said, "we will defer to the trial court when valuations are accompanied with supporting credibility findings or corroborating evidence." *In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999). "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

**III. Discussion.**

**A. Tad's Annual Income.** The district court determined Tad's annual income is $119,882. It reached this amount by adding Tad's reported gross income from both the farm and the archery business to the value of the inventory the store had on hand at the end of the year, and then subtracting the cost of the goods sold and the annual straight-line depreciation.[4] The court did this for each year from 2013 to 2017 and then averaged the five years. *See In re Marriage of Knickerbocker*, 601 N.W.2d 48, 52 (Iowa 1999) (finding that substantial fluctuations in earnings make it necessary to average the parent's income over a reasonable time to arrive at current monthly income).

---

[4] The court used these figures, adding together the archery gross, farm gross, and value of inventory on hand, and then subtracting the cost of goods sold and straight-line depreciation to get each year's annual income.

| Year | Archery Gross | Farm Gross | Value of Inventory on Hand | Cost of Goods Sold | Straight-line depreciation | Annual Income |
|------|---------------|------------|----------------------------|--------------------|----------------------------|---------------|
| 2013 | 376,780 | 24,105 | 44,665 | 326,531 | 1460 | $117,559 |
| 2014 | 190,522 | 53,383 | 41,585 | 161,597 | 3505 | $120,388 |
| 2015 | 201,351 | 24,388 | 36,465 | 151,647 | 4134 | $106,423 |
| 2016 | 187,771 | 75,774 | 47,895 | 158,602 | 5552 | $147,286 |
| 2017 | 201,959 | 49,318 | 36,225 | 174,967 | 4785 | $107,750 |

On appeal, Tad maintains the court should not have included the value of the inventory on hand at the end of each year as part of its income calculation. He also argues the court was wrong not to deduct his reasonable business expenses—for both the farm and the archery shop—in calculating his income. And our supreme court has stated that *"some* consideration must be given to business expenses reasonably necessary to maintain the business or occupation." *In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991); *see also In re Marriage of Golay*, 495 N.W.2d 123, 126–27 (Iowa Ct. App. 1992) (approving the deduction of out-of-pocket business expenses of a self-employed person, including depreciation, postage, office expenses, and promotion).

Tad offers, as he did at the district court, that the court should use annual income of $40,000 for the purpose of calculating child support. At trial, Tad failed to explain his number. In his brief, Tad argued his annual net income in the years 2013 to 2017 ranged from a low of $12,072 to a high of $45,589—leading to an average annual income $28,572. In his calculations, Tad took the business expenses reported and added back all of the accelerated depreciation taken for each business on the Schedule F tax form. Still Tad agreed to use $40,000 as the gross annual income for child support purposes.

Here, any argument about the correct formula is inapposite, as the district court determined that the numbers Tad reported on the various financial documents were "underreported" and that "Tad [was not] credible in this respect; he has minimized his earnings/ability to earn." While we cannot disagree with the district court, we pause to highlight Verna's inconsistent positions. First, she signed every joint tax return verifying the accuracy of the documents. Now without

analyzing the untruthfulness of the numbers reported, she suggests the returns are "not accurate." To underpin her theory of underreporting, Verna testified that with Tad's claimed income of less than $40,000 per year, they maintained a large home, were raising three children, and yet somehow also paid around $120,000 toward the Copperhead land mortgage in less than three years without incurring any other debt. They also made improvements to their residence during this same time and bought at least one new vehicle, which Verna valued at $32,000 at the time of dissolution and for which there was no debt. Verna noted Tad held large sums of cash and pointed to one large purchase with cash—$38,000 for a skid loader. While Verna was employed outside the home and family businesses some of these years, we note her greatest reported income was around $26,000, which was in 2015. And during the times Verna worked outside the home, the family had the added expense of daycare.[5]

Tad complains of the amount of income attributed to him, but the court found Verna to be a more credible source of information regarding how much money the business made and the role cash played in supporting the family lifestyle. The court determined Tad's annual income was a few thousand dollars less than Verna urged, settling on an amount between that argued by each party. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (noting that while our review is de novo, "[w]e give weight to the findings of the district court, particularly concerning the credibility of witnesses"). Without more specific and credible

---

[5] There was some indication that children may have gone to daycare irrespective of whether Verna was receiving a wage from an outside employer, but, if anything, that cuts against Tad's claim that his income was $40,000, as it adds another expense to consider while the family subsisted on Tad's income alone.

information to base a calculation and with the district court's credibility findings, we cannot say the district court made a mistake.

**B. Property Distribution and Equalization Payment.** Tad challenges the property distribution and resulting equalization payment of $372,169 he was ordered to make to Verna. The district court reached this amount by setting aside the business and its inventory and the $110,000 Tad spent purchasing the land the marital residence sits on. It then split equally the net assets remaining.

Tad maintains Verna should not get any value from the 149-acre marital residence or the Edel property. He urges for the first time on appeal that Verna should get only 25% of the equity in the Copperhead property as it existed at the time of their separation ($114,240). He also asks for a $26,000 offset against the auction proceeds.

On cross-appeal, Verna argues the equalization payment should not be reduced and, if anything, it should be increased. She maintains she should have been awarded some value of the archery business and challenges the district court's inclusion of $20,000 of Tad's credit card debt in the marital liabilities.

We begin by noting that while the district court intended to give Verna half of all assets after first setting aside the $110,000 purchase price for the marital residence and the archery business, it appears the district court accidentally erased $100,000 of marital assets in its calculation. During its opinion, when discussing the individual real estate properties, the court specified it would use the value of the properties as determined by the appraiser using the cost approach analysis. This amount is $1,139,863, which the court correctly listed. But in a chart later in the opinion, which the court used to compute the parties' assets and

liabilities, the court listed the value of the real estate as $1,039,863. From this, the court determined the net assets were $744,337 and ordered Tad to pay Verna an equalization payment of half of that—$372,169. But half of the assets should have been $422,168.50.

We see no reason why Verna should not get half the value of the land bought during the marriage with marital funds. *See In re Marriage of Robison*, 542 N.W.2d 4, 5 (Iowa Ct. App. 1995) ("Iowa is an equitable distribution state which means the partners in a marriage that is to be dissolved are entitled to a just and equitable share of the property accumulated through their joint efforts."). Despite Tad's contention otherwise, the Copperhead property was paid for with marital monies. Tad urges us to conclude it was him making the payments on the mortgage, but as the parties were still married during that time, the payments he made came from marital funds. Similarly, the Edel property was largely purchased during the parties' marriage. One or two of the four payments may have been made before the parties' marriage, but, even then, Tad and Verna were engaged, living together, and raising a child together during this time. *See In re Marriage of Squires*, No. 02-1613, 2004 WL 57577, at *1–2 (Iowa Ct. App. Jan. 14, 2004) (rejecting husband's claim that farm bought six months before the parties married was a premarital asset, where the couple cohabited for years before marrying)).

That being said, Verna and Tad did not have a long marriage, and Iowa law does not require an equal split of assets for the property division to be equitable. *See Hansen*, 733 N.W.2d at 703 ("An equitable division is not necessarily an equal division."); *see also In re Marriage of Hansen*, 886 N.W.2d 868, 872 (Iowa Ct. App. 2016) ("[T]he claim of a party to the premarital property owned by the other spouse

in a short-term marriage is 'minimal at best.'" (citation omitted)). Tad brought far more assets into the marriage, which lasted less than six years, so it makes sense that he should leave the marriage with more assets. *See Hansen*, 886 N.W.2d at 873 ("But to achieve equity, the division need not be equal in most short-term marriages. Rather, it is often equitable to simply award the property to the party that brought it into the marriage."). We agree with Tad that the district court should have awarded him more of the value of the marital residence than just the $110,000 purchase price. Tad built the home and the shop before he and Verna entered into a relationship. We acknowledge the home was not yet finished when Verna moved in but it must have been livable, and Tad testified he bought all the items to finish the home at the beginning, so any work done later did not involve further expenditures of money. We set aside the $110,000 purchase price for the land as well as the value of the dwelling, attached garage, and shop to Tad without providing any offset to Verna. We divide the remaining value of the real estate (not including the archery business) of $728,605 equally between the two parties.[6]

Tad listed seven items he bought before the marriage and then sold during the marriage, estimating those sales brought in about $26,000, which he and Verna then used to buy pieces of equipment that will now be auctioned. "A premarital asset is not otherwise set aside like gifted or inherited property." *In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). Recognizing property that one party brought into the marriage is just one factor in making an

---

[6] Using the values determined by the appraiser, we take the total value of the real estate, $1,139,863, and subtract the $110,000 purchase price, the value of the dwelling ($281,398), attached garage ($11,768), and shop ($8092) to get $728,605.

equitable division of marital property. *See id.*; s*ee also* Iowa Code § 598.21(5)(a)– (m). The equipment Tad and Verna bought will, presumably, sell for less at auction than they first paid for it. But Tad believes he should get back the exact $26,000 of "premarital" money that he invested into the equipment, leaving Verna to bear the loss of value alone. This would not be an equitable division of assets, and we agree with the district court's decision not to award Tad the first $26,000 of the auction proceeds before splitting the rest.

Verna maintains she should receive some value for Tad receiving the archery shop. Tad owned the business long before their relationship began, and his marriage to Verna was less than six years of his nearly twenty owning the business. While Verna worked in the archery business some and helped with advertising, it is not clear the business is any more profitable now than it was before. *See In re Marriage of Hass*, 538 N.W.2d 889, 892–93 (Iowa Ct. App. 1995) (recognizing that in a short marriage, parties generally get the property they entered the marriage with, though the other spouse may be entitled to some of the increase in value of that property if the appreciation which occurred during the marriage was based on the efforts of the parties). Verna benefitted from the business income during her marriage and, at dissolution, has benefitted from the property the business income allowed the parties to accumulate. Verna wants half of what she believes the purchase price of the business is, but Tad was not selling the business at the time of the dissolution. If he was, his income would have been substantially lower, which would have reduced his child-support obligation. Like the district court, we conclude Verna is not entitled to any value of the business.

Next, Verna challenges including $20,000 of Tad's credit card debt in the division of marital assets. Verna questions whether the debt existed, noting Tad did not introduce evidence of the balance—other than stating it existed on his financial affidavit—and points to the couple's historic practice of paying off their credit cards each month. In the alternative, she argues that if the debt exists, Tad incurred it during separation and it should not be factored into the marital assets and liabilities. While the district court was generally skeptical of Tad's income reporting, the court explicitly stated it believed Tad had the credit card debt he reported. But we are hampered by the lack of any document confirming the debt and by the lack of testimony establishing the basis for these charges. Thus it is unknown if the charges related to the business or were for assets unaccounted for in the trial. Without this information, it is unfair to characterize the debt as marital. The $20,000 credit card debt should be excluded from the calculation involving marital assets and debts.

Based on all the foregoing, we modify the equalization payment from Tad to Verna to the amount of $281,539.86.[7] We leave intact the district court ruling

---

[7]These are the marital assets we divide equally between Verna and Tad.

| Category | Tad | Verna |
|---|---|---|
| Marital Assets | | |
| Real Estate | $728,605 | |
| Toyota Sienna | | $32,000 |
| Chevy Crew Cab | $21,500 | |
| IPERS | | $9129.13 |
| First State Bank | $15,000 | |
| C1st Credit Union | | $122.11 |
| Various Items | $530 | $320 |
| **Total Assets** | **$765,635** | **$41,571.24** |
| Marital Debts | | |
| Capitol One | | $3643.43 |

that Tad shall pay the equalization payment at the rate of $5000 per month with the option to prepay the obligation and potentially reduce his interest payments.

**C. Attorney Fees.** Tad maintains the district court abused its discretion when it ordered him to pay $6000 of Verna's attorney fees. "[C]onsiderable discretion is assigned to the trial court in the allowance of attorney fees." *In re Marriage of Winegard*, 257 N.W.2d 609, 618 (Iowa 1977). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). As Tad earns more than what Verna earns and was awarded more than a half million dollars of assets, we cannot say the district court abused its discretion in ordering him to pay $6000 of Verna's fees.

**D. Appellate Attorney Fees.** Both Tad and Verna request appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*Id.* (citation omitted). Both parties appealed the district court ruling, and neither party has been totally successful on appeal. Because of the difference in the parties' incomes, we order Tad to pay $5000 of Verna's appellate attorney fees.

| Mortgage | $164,627.48 | |
| **Total Debt** | **$164,627.48** | **$3,643.43** |
| NET VALUE | $601,007.52 | $37,927.81 |

The difference in Tad's net marital assets ($601,007.52) and Verna's net marital assets ($37,927.81) is $563,079.71. Half of the difference is $281,539.86.

**IV. Conclusion.**

We agree with the district court's finding that Tad's income for the purpose of child support is $119,882.  We reduce the equalization payment Tad is required to make to Verna to $281,539.86.  Tad is still required to pay the equalization payment at the rate of $5000 per month or may choose to prepay the obligation. We affirm the district court's award of attorney fees to Verna in the amount of $6000 and order Tad to pay $5000 of Verna's appellate attorney fees.

**AFFIRMED AS MODIFIED ON BOTH APPEALS.**