# IN THE COURT OF APPEALS OF IOWA

No. 20-0399
Filed May 12, 2021

IN RE THE MARRIAGE OF ERIKA MICHELLE OLSON
AND MICHAEL ALBERT OLSON

Upon the Petition of
ERIKA MICHELLE OLSON,
    Petitioner-Appellee/Cross-Appellant,

And Concerning
MICHAEL ALBERT OLSON,
    Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Marion County, Thomas P. Murphy, Judge.

Michael Olson appeals and Erika Olson cross-appeals the dissolution decree awarding spousal support and trial attorney fees. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Becky S. Knutson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Michael Olson appeals and Erika Olson cross-appeals from the decree dissolving their marriage. Michael challenges the provisions ordering him to pay spousal support, uncovered medical expenses, and trial attorney fees to Erika. Erika argues the district court should have ordered Michael to pay additional trial attorney fees, and she requests appellate attorney fees.

## I.    Background Facts and Proceedings

Michael was born in 1963, and Erika was born in 1971. The parties married in September 1996, entering into a prenuptial agreement beforehand. The parties had two children together, born in 1997 and 2004.

In 2018, Erika filed a petition for dissolution of marriage. The district court entered a temporary order addressing certain issues, including ordering Michael to pay $1008.00 in temporary monthly child support, $2000.00 in temporary monthly spousal support, and $3000.00 in temporary attorney fees. Michael filed a motion under Iowa Rule of Civil Procedure 1.904(2), and in response the court retroactively reduced Michael's temporary monthly spousal support obligation to $1750.00. Michael appealed the temporary support and attorney fees, and we affirmed the temporary order. *See In re Marriage of Olson*, No. 18-1860, 2019 WL 4302128, at *1–2 (Iowa Ct. App. Sept. 11, 2019).

Following a trial in October 2019, the district court issued a decree dissolving the marriage. Among its provisions, the decree granted the parties joint legal custody of their one minor child and placed physical care with Erika; ordered Michael to pay $758.13 per month in child support; ordered Michael to pay $2000.00 per month in spousal support, increasing to $2500.00 per month when

the parties' child is no longer eligible for child support; otherwise found the prenuptial agreement is enforceable; divided the parties' property, awarding a significantly larger share of the net assets to Michael in accordance with the prenuptial agreement; and ordered Michael to pay $25,000.00 of Erika's trial attorney fees in addition to any other attorney fees already ordered. Both parties filed rule 1.904(2) motions, and the court made minor amendments to the decree in response but kept the ultimate conclusions intact. Michael appeals, and Erika cross-appeals.

## II.   Standard of Review

We review a dissolution-of-marriage proceeding de novo. Iowa R. Civ. P. 6.907; *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses[1]; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Although our review of the trial court's award [of spousal support] is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Olson*, 705 N.W.2d 312 (Iowa 2005) (quoting *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996)). "We review the district court's award of attorney fees for an abuse of discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

---

[1] We are mindful the district court pointedly found Michael "not credible," especially in his valuations.

### III.    Spousal Support

Michael requests a substantial reduction in his spousal support obligation on several grounds.  The court may award spousal support after a fact-specific inquiry into several factors.  *See* Iowa Code § 598.21A(1) (2018); *Gust*, 858 N.W.2d at 407.  The parties were married twenty-three years, a duration that "merit[s] serious consideration for traditional spousal support."  *See Gust*, 858 N.W.2d at 410–11; *see also* Iowa Code § 598.21A(1)(a).  The property division also favors significant spousal support.  *See* Iowa Code § 598.21A(1)(b).  As the district court noted, "Erika is receiving very little property" and "has almost no retirement savings" due to the required property division under the prenuptial agreement, especially in comparison to the property Michael received.[2]

As to the parties' earning capacities, the district court determined Michael's to be $121,932.90[3] per year and Erika's to be $21,951.00 per year.  *See id.*

---

[2] The district court did not value most of the parties' property or their combined net worth.  In their financial status affidavits immediately before trial, Michael valued the parties' combined net worth at $579,331.00, and Erika valued the parties' net worth at $784,766.57.  After the dissolution, Erika's most significant assets are: her share of equity in the family home, comprising a payment of $85,581.00; two retirement accounts, on which she placed a combined value of $6230.35; and her vehicle, on which she placed a net value of $7560.46.  Michael received most of the parties' remaining property, including rental real estate, classic cars, and a collection of coins and other items he values at $95,840.00.  Michael jointly owns some of this property with one or both of the parties' children.

[3] Although Michael does not challenge his child support obligation, he asserts the district court wrongly calculated his salary based on his paychecks being issued every two weeks instead of twice per month.  Thus, according to Michael, his gross annual income should be $113,476.14 instead of $121,932.90.  Michael raised this issue in his rule 1.904(2) motion.  In response, the district court noted Michael's poor credibility with valuations, and it found Michael's bonuses would push his income up to $121,932.90 even if his regular salary fell short of that number.  We agree with the district court.  Furthermore, even if we were inclined to believe the district court overstated Michael's total income by about seven percent, our supreme court has cautioned us against "unduly refin[ing]" awards of spousal

§ 598.21A(1)(c). Michael testified he has thirty-one years of experience in the banking industry and is currently working as a vice president of commercial lending at a local bank. Michael also receives benefits from working in the Army National Guard. Michael's earning capacity is comparatively high in relation to Erika's, and there is no reason to believe his earning capacity will decline in the foreseeable future.

Erika testified she has worked as a paraeducator in her local school for about seven years and in a grocery store for about two years. She planned to earn an associate's degree in May 2020 and then earn a bachelor's degree after two and one-half years of additional classes. She hopes to eventually work in human resources, though she has no firm job prospects for after graduation. Even if she earns a bachelor's degree in over three years as planned, she must repay student loans while likely working an entry-level position for an uncertain time. While she is generally in good health, she was forty-eight years old at trial and has limited time to prepare for retirement with a much smaller earning capacity.

After considering the relevant factors, we do not find the district court failed to do equity in ordering Michael to pay a significant amount of traditional spousal support. However, we also find the equities require certain modifications in Michael's favor.

First, in ordering the spousal support obligation, the district court stated, "Spousal support will continue at the amount at which it is currently set." Yet the district court, without explanation why, increased Michael's spousal support

---

support. *Gust*, 858 N.W.2d at 407 (quoting *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996)).

obligation from $1750.00 per month under the temporary order to $2000.00 per month under the decree. While neither the district court nor we are tethered to the temporary spousal support figure, we agree with the district court that the equities here support making Michael's final spousal support obligation "continue at the same amount at which it is currently set" by the temporary support order, which is $1750.00 per month.[4]

Second, the district court ordered Michael's spousal support obligation to increase to $2500.00 when the parties' child no longer qualifies for child support. Child support is intended to "cover the normal and reasonable costs of supporting a child." *In re Marriage of Okland*, 699 N.W.2d 260, 268 (Iowa 2005). By contrast, spousal support focuses on the parties' needs and abilities. *See Gust*, 858 N.W.2d at 411. We see no indication Erika's need for spousal support will increase when the parties' child no longer qualifies for child support. Therefore, we eliminate the increase in Michael's spousal support obligation when his child support obligation ends.

---

[4] We surmise the district court, in making the finding "[s]pousal support will continue at the amount at which it is currently set," intended to keep spousal support at the temporary support level of $1750.00 per month, as the evidence at trial made it clear that $1750.00 per month was the amount Michael had been ordered to pay as temporary spousal support. We further surmise that, after stating it intended to keep spousal support at the same level, the district court simply made a mistake in reciting that amount at $2000.00 per month. This mistake may have stemmed from the fact that a temporary support order was originally issued setting spousal support at $2000.00 per month. However, upon reconsideration, the temporary spousal support amount was decreased retroactively to $1750.00 per month and that figure remained in place through trial. This change may have caused confusion when the district court entered its final decree. Even if we are mistaken in our determination the district court intended final spousal support to be $1750.00 per month instead of $2000.00 per month, upon our de novo review, we find $1750.00 per month to be the appropriate amount.

Third, the district court did not provide for Michael's spousal support obligation to end in the event Erika remarries. Generally, spousal support obligations automatically end upon remarriage of the recipient spouse. *See In re Marriage of Wendell*, 581 N.W.2d 197, 199 (Iowa Ct. App. 1998). Whether remarriage terminates a spousal support obligation depends on the purpose of the support. *See id.* at 200 ("Rehabilitative and reimbursement [support], for example, are often unaffected by remarriage."). The district court explicitly declined to address remarriage in the decree, but we see no reason to continue Michael's traditional spousal support obligation after Erika remarries or after the death of either party. *See Gust*, 858 N.W.2d at 412 ("[T]raditional spousal support is normally payable until the death of either party, the payee's remarriage, or until the dependent is capable of self-support at the lifestyle to which the party was accustomed during the marriage."). Therefore, we modify Michael's spousal support obligation to terminate in the event Erika remarries or on the death of either party, whichever occurs first.

Finally, Michael asks us to terminate the spousal support order upon his retirement. While Michael is less than ten years away from reaching the traditional retirement age, the parties did not discuss their plans for retirement during trial. Michael is generally in good health and gave no indication he plans to retire in the foreseeable future. Even when he retires, his substantial assets and financial savvy may allow him to earn a significant retirement income. We find no failure to do equity in the district court declining to address retirement in the decree. *See id.* at 416 ("[F]uture retirement will ordinarily be considered to raise too many speculative issues to be considered in the initial spousal support award.").

In summary, we modify the decree to order Michael to pay to Erika $1750.00 per month in spousal support, retroactive to November 1, 2019 (the starting date for Michael's spousal support obligation set forth in the decree).[5]   Michael's spousal support obligation will continue at $1750.00 per month after the parties' minor child is no longer eligible for child support.   Michael's spousal support obligation is indefinite in duration, but it will terminate upon the earliest to occur of Erika's remarriage or the death of either party.   Like the district court, we decline to make Michael's retirement a triggering event for cessation of his spousal support obligation.

## IV.     Uncovered Medical Expenses

The district court ordered Erika to pay the first $250.00 of medical expenses for the parties' minor child, not to exceed $500.00 annually, with Michael paying eighty-four percent of the remaining expenses and Erika paying sixteen percent.

---

[5] An appellate court decision on direct appeal that decreases periodic spousal support payments relates back to the date of the original decree. *In re Marriage of Wegner*, 461 N.W.2d 351, 353 (Iowa Ct. App. 1990); *see also In re Marriage of Woolf*, No. 01-0878, 2002 WL 31525435, at *4 (Iowa Ct. App. Nov. 15, 2002). Understandably, the record does not tell us whether Michael has been making periodic spousal support payments under the decree since its entry. If he has, the modification provided for in this opinion will result in Michael having overpaid. Neither party addressed how any resulting overage in support payments should be addressed. It is "within the power of an appellate court in such situations to provide for a reduction in the amount of future payments over the period of time required to exhaust any overplus resulting from the decision on appeal." *Thomas v. Minner*, 340 N.W.2d 285, 287 (Iowa 1983). However, in light of the fact the record does not provide us with information as to the status of Michael's payment history or the parties' current financial situation, we decline to exercise our power to decide how Michael is to be reimbursed for any overpayment in spousal support payments, if any. To avoid the costs of further district court litigation and another appeal, the parties are encouraged to reach an agreement for a method allowing Michael to recoup any overpayment of spousal support. If the parties cannot reach such an agreement, either party is permitted to apply to the district court to make such a determination based on the parties' then-existing circumstances.

Michael challenges this allocation.

Our rules of civil procedure require the allocation of uncovered medical expenses in proportion to the parties' net incomes. Iowa R. Civ. P. 9.12(5). It appears the district court allocated the expenses according to the parties' gross incomes instead of net incomes,[6] and it did not make written findings to support a variance. *See* Iowa Rs. Civ. P. 9.5 (defining gross and net incomes), 9.11 (requiring "a written finding that the guidelines would be unjust or inappropriate" for a variance from the guidelines). We find no reason to vary from the guidelines. However, in light of our modification of Michael's spousal support obligation above, we also adjust the parties' net incomes for calculating this apportionment. Therefore, we modify the decree to apportion uncovered medical expenses beyond Erika's initial responsibility to sixty-three percent for Michael and thirty-seven percent for Erika retroactive to the date of the decree (i.e., January 5, 2020).

**V.      Trial Attorney Fees**

Both parties argue the district court abused its discretion in ordering Michael to pay $25,000.00 for Erika's trial attorney fees. Michael argues the district court ignored Erika's role in making "these proceedings unnecessarily difficult" and the award revealed the court's inequitable "regret for following the law and enforcing the prenuptial agreement." Erika argues a larger award of attorney fees is warranted in light of the ultimate property distribution.

---

[6] Under the decree, the district court found the parties' adjusted net monthly incomes to be $5564.50 for Michael and $3623.90 for Erika after factoring in the spousal support award.

The decree shows the district court considered the entire proceedings when awarding attorney fees, including Erika's earlier motion to compel and motion for sanctions:

> Michael's actions throughout this case demonstrate that he understands the rules and the directives of the court. Michael deliberately did not perform as directed by the court and the rules. A portion of the fees to be awarded are in contemplation of Erika's motions.
> Erika significantly prevailed at trial. While the court did not obviate the entire prenuptial agreement, the court is awarding Erika significant traditional spousal support. Michael only wanted to pay a small amount, for a limited time.
> Michael made this case unnecessarily difficult. Erika's fees should not have been so exorbitant.
> Michael has the ability to pay fees. Erika does not. Erika requested $25,000, though her bill was over twice that. Erika's request is reasonable and that is what she shall receive. The award is in addition to the fees Michael has already been ordered to pay.

(Footnote omitted.)

Trial attorney fees should be based "on the respective abilities of the parties to pay" and "must be fair and reasonable." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). We recognize the district court did not fully address Erika's role in prolonging the litigation here, including the motion to compel Michael filed and the court's subsequent sanctions against Erika. Nevertheless, an award of trial attorney fees is largely within the district court's discretion, and we find the court did not abuse its discretion in awarding trial attorney fees.

## VI. Appellate Attorney Fees

Finally, Erika requests appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Okland*, 699 N.W.2d at 270. In addition to the factors supporting an award of trial attorney fees, "we consider whether the party making the request was obligated to defend the trial

court's decision on appeal." *Guyer*, 522 N.W.2d at 822. While Michael achieved a modification of his spousal support obligation, we view Erika as the predominantly prevailing party due to the remaining significant spousal support order. In light of this outcome, Michael's much greater ability to pay attorney fees, and the fact Erika was required to defend and largely prevailed on appeal, we believe Michael should be ordered to pay a portion of Erika's appellate attorney fees. *See Olson*, 2019 WL 4302128, at *3 (ordering Michael to pay a portion of Erika's appellate attorney fees in the appeal of the temporary support order). Michael remains obligated to pay $1750.00 per month in spousal support, which is seventy percent of Michael's maximum spousal support obligation of $2500.00 per month as ordered by the district court. We believe Michael should also pay seventy percent of Erika's appellate attorney fees.

Erika's attorney has submitted an attorney fee affidavit claiming appellate fees of $14,505.00. Based on the facts and circumstances of this case, we find the fees claimed to be reasonable and necessary. Michael is ordered to pay seventy percent of the claimed fees, or $10,153.50, and judgment is hereby entered in favor of Erika and against Michael for that amount.

## VII. Conclusion

We modify Michael's spousal support obligation to Erika to be $1750.00 per month, continuing at that amount after Michael's child support obligation ends, and terminating upon the earliest of Erika's remarriage or the death of either party. We also modify the apportionment of uncovered medical expenses to reflect the parties' net incomes as stated in this opinion. We reject both parties' claims the district court abused its discretion in ordering Michael to pay a portion of Erika's

trial attorney fees.  We find Michael shall pay seventy percent of Erika's appellate attorney fees of $14,505.00, and we hereby enter judgment against Michael for that seventy percent figure of $10,153.50.  Costs on appeal are assessed seventy percent to Michael and thirty percent to Erika.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**