**IN THE COURT OF APPEALS OF IOWA**

No. 24-1692
Filed October 1, 2025

IN RE THE MARRIAGE OF JENNIFER LYNN KING
AND DANIEL JAY KING

Upon the Petition of
JENNIFER LYNN KING,
        Petitioner-Appellant,

And Concerning
DANIEL JAY KING,
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

A former wife challenges the spousal support award in the decree dissolving her long-term marriage. **AFFIRMED AS MODIFIED AND REMANDED.**

Mark Simons of Simons Law Firm, PLC, West Des Moines, for appellant.

Marcy Lundberg of Cordell Law, LLP, Des Moines, for appellee.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

After more than thirty years of marriage, Jennifer and Daniel King divorced. In the divorce decree, the district court divided their property and awarded Jennifer $2800 per month in spousal support for ten years. Jennifer appeals both the amount and duration of that award. We find the district court did equity in calculating the monthly stipend. But we modify the decree to extend the duration of Daniel's obligation.

## I. Facts and Prior Proceedings

Jennifer and Daniel started dating as teenagers and married in 1994. Jennifer earned her associate of arts degree in June 1994 but did not work outside the home during the marriage. Daniel earned his bachelor of science degree and completed the requirements to become a certified public accountant. Jennifer and Daniel have five children together.[1] They agreed during their marriage that Jennifer would stay at home with their children.

The family first lived in California and relocated to Denver, Colorado, in June 2001. They later bought a house in Ankeny and lived there together from March 2022 through November 2022. Then Jennifer remained in Ankeny, and Daniel moved to their Colorado home. Daniel held various financial management positions, working his way up to director of risk management. He started his own consulting firm in 2012. In 2018 he began working at Xactly Corporation and worked there until 2022. That year, Daniel earned just over $200,000.

---

[1] One child died at a young age. The other four were adults by the time Jennifer petitioned to dissolve the marriage.

Daniel struggled with addiction during the marriage. He testified that before he sought treatment, he diverted about $20,000 per year in cash from his business account to pay for activities driven by his addiction. But he emphasized that far more of his earnings went to support his family.

Daniel's health took center stage in 2019 when he was diagnosed with stage-four colon cancer. He had surgery and began chemotherapy in November 2019. He was still receiving oral chemotherapy at the time of the trial. He experiences a range of side effects, including peripheral neuropathy in his hands and feet, compromised immunity, bloody noses, brain fog, and fatigue. The cancer limited his ability to work. Initially, he took two weeks off work from Xactly. In May 2022, he was placed on short-term disability. He was later approved for long-term disability benefits. He now receives a combined income of $15,000 per month from Social Security Disability Insurance and a non-taxable annuity. As far as his cancer prognosis, he "anticipate[s] it to be the same for the rest of [his] life."

Turning to Jennifer, the district court was troubled by her representations concerning the family's financial resources. Jennifer served as trustee of the King family trust, which Daniel's mother created to benefit Daniel and his sister. With trust funds, Jennifer and Daniel purchased a condo in Ames in 2013. Their daughter and her boyfriend lived there and paid Jennifer $1600 a month. But Jennifer claimed in an affidavit that she only received $740 per month in rent for the Ames condo. Also, Jennifer removed $68,100 from a joint checking account in January 2023 and prevented Daniel from collecting $10,000 from that account's remaining funds. During trial, she acknowledged having $122,668 in her

possession at the end of February 2023. But she could not recall how she spent $76,000 of that amount.

In May 2023, Jennifer petitioned to dissolve their marriage. Four months later, Jennifer sought a preservation of assets order. The court granted her request, requiring the parties to obtain court approval or written agreement from the other party to make non-routine expenditures. Despite that order, Jennifer contracted to pay $22,136.26 for the installation of a stone patio at the Ankeny home. She made the first payment just days after the court entered the preservation-of-assets order.

In June 2024, the district court held a bench trial on this matter. Both spouses testified. Jennifer, who was then fifty-three years old, asked for $6000 per month in spousal support for the rest of her life. Daniel, who was fifty, testified that he would not be able to afford that amount.

The court entered a decree dissolving the marriage in September 2024. It found that neither Jennifer nor Daniel were completely believable but on balance Daniel's testimony was more credible. It distributed assets, awarding Jennifer sixty-two percent of the marital estate and Daniel thirty-eight percent. In doing so, it considered Jennifer's unaccounted-for cash and the money spent on home improvement projects while the dissolution was pending.

After allocating debts and assets, the court made a spousal support award. It considered Jennifer's earning capacity and Daniel's fixed income that will decrease once he turns sixty-five. It also considered the disparity in the property settlement distribution. The court awarded Jennifer $2800 per month beginning in September 2024 and continuing for ten years. Jennifer appeals.

## II. Scope and Standards of Review

Dissolution of marriage proceedings are equitable actions. Iowa Code § 598.3 (2023). So our review is de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). On spousal support challenges, we build in "considerable latitude" for the district court's discretion. *Id.* We avoid undue tinkering with those awards. *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). But the district court's findings are not binding on appeal. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012). We modify a spousal support award when it does not achieve equity. *Gust*, 858 N.W.2d at 406.

## III. Analysis

Jennifer argues her spousal support award is inequitable. She claims she is entitled to sustain the lifestyle she enjoyed during the marriage and the district court should not have considered the property distribution in rejecting a more generous alimony award. As a secondary issue, Jennifer urges us to remand with directions to the parties to exchange tax returns from 2023. Finally, she asks for appellate attorney fees. We address each claim in turn.

### A. Is Jennifer's spousal support award equitable?

Awarding spousal support is a matter of discretion and depends on the facts of each case. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). In making this decision, we consider these factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.

> e. The earning capacity of the party seeking maintenance, including education background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
>
> g. The tax consequences to each party.
>
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
>
> i. The provisions of an antenuptial agreement.
>
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

Iowa case law now recognizes four kinds of spousal support: traditional, rehabilitative, reimbursement, and transitional. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 539, 542 (Iowa 2022). Traditional support is typically awarded "in long-term marriages where life patterns have been largely set." *Gust*, 858 N.W.2d at 410. "In marriages of relatively long duration, '[t]he imposition and length of an award of traditional alimony is primarily predicated on need and ability.'" *Id.* at 411 (quoting *In re Marriage of Wendell*, 581 N.W.2d 197, 201 (Iowa Ct. App. 1998)). To determine need, the court must consider "the ability of a spouse to become self-sufficient at 'a standard of living reasonably comparable to that enjoyed during the marriage.'" *Id.* (quoting Iowa Code § 598.21A(1)(f)). And to limit traditional support, evidence must show that "the payee spouse has the capacity to close the gap between income and need or show that it is fair to require him or her alone to bear the remaining gap between income and reasonable needs." *Gust*, 858 N.W.2d at 412.

The district court acknowledged the parties' agreement that the length of their marriage surpassed the threshold for traditional support. But the court noted that traditional support may be modified under certain circumstances, including significant changes in either party's earnings or ability to work.

We agree that traditional support is appropriate. Jennifer was the primary caregiver for their children and never worked outside the home during the marriage. But the evidence also shows that it is fair to require her to bear the remaining gap in income and reasonable needs. Daniel's income is fixed, and once he turns sixty-five, his annuity will stop. His income will be reduced to his Social Security benefits. Accordingly, Daniel has worked to adjust his budget and lifestyle.[2] In contrast, Jennifer insists on perpetuating the lifestyle accommodated by Daniel's higher earnings. True, they agreed she would stay home to provide childcare. But circumstances have changed, the children are adults now, and Jennifer can work. A vocational expert testified that Jennifer could earn as much as $40,000 per year in a full-time position, along with health insurance and retirement savings.

While we agree with the amount of the district court's award, its limitation to ten years appears unsupported. In Daniel's request for relief, he asked that spousal support be set at $2800 per month continuing until he reaches the age of sixty-five, considering his income will be reduced at that time. We agree that it would be equitable for Daniel's support obligation to continue until his sixty-fifth birthday.

---

[2] Exhibits show emails Daniel sent to Jennifer in April and May 2023 in which he attempts to sort through their budget.

Jennifer also argues that the district court should not have relied on the property distribution in determining spousal support. But Iowa Code section 598.21A(1)(c) permits the court to consider this factor. *See In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009) ("In assessing a claim for spousal support, we consider the property division and spousal support provisions together in determining their sufficiency."). Yet Jennifer claims that the disparity between their property awards is illusory because her assets are not liquid nor do they have clearly defined values. Despite our de novo review, we give weight to the district court's fact findings. *See Schenkelberg*, 824 N.W.2d at 484. The district court found Daniel more credible. So when dividing assets, the court set off unaccounted-for funds to Jennifer. The district court properly relied on that property distribution in determining spousal support.

## B. Should we remand with instructions to exchange tax returns?

Jennifer asks us to remand this case and direct the parties to exchange their 2023 and 2024 tax returns. But she does not point to any location in the record where this issue was raised or decided by the district court. Thus, there is nothing for us to review. *See State v. Hernandez*, 20 N.W.3d 502, 509 (Iowa Ct. App. 2025) ("[W]e cannot correct an 'error' the district court never made.").

## C. Is Jennifer entitled to an award of appellate attorney fees?

Lastly, Jennifer requests an award of appellate attorney fees. Appellate attorney fees are not awarded as a matter of right. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Instead, any award rests in our discretion. *Id.* We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Here Jennifer

partially succeeded on appeal. We find it appropriate to award her twenty percent of the reasonable and necessary fees incurred on appeal. Because we do not have an attorney fee affidavit filed on Jennifer's behalf to determine the amount of such fees, we must remand for the district court to make that determination. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473–74 (Iowa Ct. App. 2021).

## IV. Conclusion

We find the district court's determination of the monthly spousal support amount was equitable to both parties. But we modify the duration of the award. We also remand for the district court to calculate the appellate attorney fee award.

**AFFIRMED AS MODIFIED AND REMANDED.**