In the Matter of the ESTATE OF Thomas W. ASCHERL, Deceased.

Ann T. ASCHERL, Claimant–Appellant,

v.

Emmett ASCHERL, Nancy Ascherl, and Peggy Ascherl, Fiduciaries of the Estate of Thomas W. Ascherl, Deceased, Appellees.

No. 88–1099.

Court of Appeals of Iowa.

June 15, 1989.

Kevin A. Fors of Parker & Fors, Fort Dodge, for claimant-appellant.

Claire F. Carlson of Kersten & Carlson, Fort Dodge, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Claimant-appellant Anna T. Ascherl appeals a district court ruling upholding the validity of an antenuptial agreement,

signed by Anna and her deceased husband Thomas W. Ascherl, and determining that Anna was precluded by that agreement from electing against her deceased husband's will. On appeal, Anna makes various claims attacking the validity of the agreement. In addition, Anna claims the district court erred in excluding evidence of her husband's deceitful character. As this action was tried at law, the fact findings of the district court are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We affirm.

Thomas and Anna met in 1978. Both Thomas and Anna had been married previously and had children from their prior marriage. Prior to their marriage, Thomas and Anna executed an antenuptial agreement. The agreement provided, in part, that each party waived any interest in the other's property and waived all rights of election to take against the other's will. Thomas also executed a will that day leaving a life estate in his property to Anna. This was subsequently changed in 1985 by Thomas's last will, which left Anna nothing.

In April 1987, Thomas passed away. In July 1987, Anna filed her election to refuse to take under the terms of her husband's will. She also filed a claim for over $40,-000 for loans and advancements she made to her husband for his business operations.

The district court ruled that the antenuptial agreement was valid and operated to prevent Anna from electing to take against the will. Despite Thomas's financial difficulties during the parties' marriage, the court found the agreement to be knowingly and intelligently made.

In our review of this case, we are guided by the principles set forth in our supreme court's decision in *Peet v. Monger*, 244 Iowa 247, 254, 56 N.W.2d 589, 593 (1953):

> There is no statute in Iowa prohibiting [antenuptial contracts], and the courts will uphold them if they are fair between the parties and fairly, freely and understandingly entered into, by persons legally competent to contract, and they do not violate the rights of others at the time made.... Such property agreements or

settlements, when within the requirements above noted, are favored by public policy, the law and the courts, as conducive to the welfare of the parties and the beneficent purposes of the marriage relation.... The vital matter to be ascertained is the intention of the parties. In seeking that intent, as in seeking the intent of the testator, the antenuptial contract, as the will, must be taken by its four corners and studied as a whole. The intention must be determined from the language of the instrument, the surrounding circumstances, and the conditions of the parties.

*Id.* (citations omitted). "If the antenuptial agreement is fair on its face and not procured by fraud it is as legal and enforceable as other contracts." *Christians v. Christians*, 241 Iowa 1017, 1021, 44 N.W.2d 431, 433 (1950).

I. Anna claims that the antenuptial agreement was unconscionable and should not have been enforced, and that the trial court's finding of knowing execution is wholly against the weight of the evidence. Anna maintains that she was deceived into signing the antenuptial contract because she was not aware of her husband's financial difficulties prior to the signing.

The burden of proving that the contract is unconscionable is on the party claiming the invalidity of the contract unless it is unjust and unreasonable on its face. *Rankin v. Schiereck*, 166 Iowa 19, 147 N.W. 180, 181–2 (1914). Upon our review of the antenuptial agreement, we fail to find anything on the face of the agreement that it is unjust or unreasonable. The agreement is plain and unambiguous. Briefly, it provided that each of the parties "waives and releases all right and interest, statutory or otherwise, including but not limited to dower, distribution in intestacy, and right of election to take against the will...." Each party also retained the right to dispose of their respective properties separately owned or separately acquired thereafter, with mutual right to transfer or convey to the other.

There is nothing in the record that indicates Thomas sought to conceal the nature

and extent of his property from Anna at the time the agreement was signed, or that she was coerced into signing. Anna and Thomas dated for over a year, and Anna visited Thomas's farm several times prior to their marriage. As the trial court noted, "she had the opportunity to view the extent of the machinery, the condition of the farm, and the circumstances surrounding its cropping." From this, we think it fair to infer that Anna was in a position to know something of Thomas's property. *See In re Parish's Estate*, 236 Iowa 822, 835, 20 N.W.2d 32, 38 (1945). Furthermore, we think it also important to note that Anna has been involved in various businesses throughout the years and was not unaware of the importance or effect of binding legal documents. We also note, as the trial court did, that Anna had been married before and had gone through a dissolution and successfully retained a fair share of the marital property.

Anna admitted that she signed the contract when it was presented to her and her husband at attorney Dave Opheim's office. Opheim testified at trial that he asked Anna if she understood why she was signing the agreement, and when she answered in the affirmative, she also stated that her husband had explained the agreement to her. Opheim also testified that it was usual practice to read and explain documents such as these to clients. He stated that if he perceived some hesitancy, uncertainty, or lack of understanding, he would routinely advise the party to consult another attorney. He testified that both Thomas and Anna voluntarily signed the agreement.

We conclude that the trial court's determination that the antenuptial agreement was valid and operated to prevent Anna from electing to take against Thomas's will is supported by substantial evidence in the record.

II. Apparently in the alternative, Anna argues that the unconscionability of the contract should be determined at the time it is being sought to be enforced and not at the time of execution. In making this argument, Anna urges this court to modify the law in Iowa to "adopt a restriction that even though an antenuptial agreement is enforceable, if the facts and circumstances have changed since the agreement was executed, enforcement of its terms must still be fair and reasonable." In Iowa, we determine whether an agreement is reasonable at the time the agreement is executed. *Britven v. Britven*, 259 Iowa 650, 657, 145 N.W.2d 450, 454 (Iowa 1966), and we see no reason in this case to modify the law at this time. We find no merit to this claim.

We affirm the trial court.

AFFIRMED.