In re the MARRIAGE OF Ileana Mercedes GONZALEZ and Fritz H. Konig.

Upon the Petition of Ileana Mercedes Gonzalez, Plaintiff–Appellee/Cross–Appellant,

And Concerning

Fritz H. Konig, Respondent–Appellant/Cross–Appellee.

No. 95–1031.

Court of Appeals of Iowa.

Jan. 29, 1997.

Hugh M. Field of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellant.

Donald B. Redfern of Redfern, Mason, Dieter, Larsen & Moore, Cedar Falls, for appellee.

Heard by CADY, P.J., and HUITINK and STREIT, JJ.

HUITINK, Judge.

Respondent Fritz Konig appeals the property division provisions of the decree dissolving his marriage to petitioner Ileana Mercedes Gonzalez. He also appeals the award of temporary support to Ileana. Ileana cross-appeals seeking alimony and an increased property award. She also requests trial and appellate attorney fees. We affirm.

Fritz, age 56, and Ileana, also age 56, were married in April 1990. Ileana was born in Guatemala and lived there most of her life. She moved to the U.S. in 1989 to marry Fritz. They have no children. Ileana teaches at West High School in Waterloo earning $24,000 per year. She has a master's degree from the University of Northern Iowa. Fritz is a professor of German at the University of Northern Iowa where he has taught for twenty-seven years. He earns approximately $60,000 per year plus retirement benefits.

Both parties were previously married. As part of the decree dissolving Fritz's first marriage, his former wife was awarded $118,000 of his TIAA–CREF retirement account. To avoid a similar outcome in the event of a second divorce, Fritz asked Ileana to sign a prenuptial agreement prepared by his lawyer. Paragraph six of the agreement provides:

> Their assets shall be divided so that each party receives property he or she is bringing into the marriage, and their separate property. Marital property shall be divided pursuant to the applicable laws of their domicile at the time of divorce.

Paragraph four provides:

> All real and personal property where located, now owned or possessed by either of the parties, shall remain the sole separate property of that person and shall be defined as separate property for the purposes of this agreement. All real and personal property either of them may acquire after the marriage shall be defined as marital property for the purposes of this agreement, with the exception of inherited property and pension or similar plans which shall be considered separate property for the purposes of this agreement.

In March 1994 Ileana filed a dissolution petition. A temporary support order was entered requiring Fritz to pay "all family obligations as they come due" and to pay Ileana $350 in attorney fees. In March 1995 the court found that Fritz had failed to pay temporary support as ordered. As a result, the court ordered him to pay $8750 of Ileana's past expenses as well as house payments, insurance payments on the home and car, utilities, and property taxes until the hearing on the merits of the petition.

As part of the divorce decree issued in May 1995, the district court concluded Ileana was entitled to a one-third share of Fritz's TIAA–CREF retirement accumulated during the marriage. The court calculated the increase in the value of the account to be $84,000. The parties' two homes, one in Waterloo and one in Austria, were deemed marital property. The court awarded the Waterloo home to Ileana and the Austrian home to Fritz. Fritz was ordered to pay

Ileana $25,000 as part of the property distribution. The district court denied Ileana's request for alimony citing the short duration of the marriage and Ileana's earning capacity. Fritz was ordered to pay Ileana $750 in attorney fees and $135 in costs.

## I. Standard of Review.

Our review of this equitable action is de novo. Iowa R.App. P. 4. *In re Marriage of Miller,* 532 N.W.2d 160, 162 (Iowa App.1995). We are not bound by the district court's findings of fact, but we do give them deference because the district court had the opportunity to view, firsthand, the demeanor of the witnesses when testifying. *Id.; In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992).

## II. Property Division.

■ *A. Prenuptial Agreement.* As a general rule, prenuptial agreements are favored and should be construed liberally to carry out the intention of the parties. *In re Marriage of Christensen,* 543 N.W.2d 915, 918 (Iowa App.1995). We treat such agreements in the same manner as ordinary contracts. *Id.* Because of the relationship of trust and confidence between the parties, the law requires a full and frank disclosure of all matters bearing upon an prenuptial agreement. *In re Marriage of Sell,* 451 N.W.2d 28, 30 (Iowa App.1989). Whether a prenuptial agreement is reasonable is determined at the time the agreement is executed and not when enforcement is sought. *Matter of Estate of Ascherl,* 445 N.W.2d 391, 393 (Iowa App.1989).

■ Prenuptial agreements that are substantively unfair are still binding if they were executed in a procedurally fair manner. *In re Marriage of Spiegel,* 553 N.W.2d 309, 314 (Iowa 1996). In assessing the fairness and validity of such agreements, we apply a substantive fairness test combined with the requirement of a knowing and voluntary waiver of a spouse's entitlement to marital property:

> The person challenging the agreement must prove its terms are unfair or the person's waiver of rights was not knowing and voluntary. The terms of an agree-

ment are fair when the provisions of the contract are mutual or the division of property is consistent with the financial condition of the parties at the time of execution. Of course, the affirmative defenses of fraud, duress and undue influence are also available to void a prenuptial agreement, as with any other contract. *Rankin v. Schiereck,* 166 Iowa 10, 15, 147 N.W. 180, 182 (1914).

*Spiegel,* 553 N.W.2d at 316. In *Spiegel,* the court held that the wife failed to show she did not sign the agreement knowingly and voluntarily. *Id.* at 317. The opinion notes she had "independent counsel who informed her in detail of the rights she was giving up and the consequences of signing the agreement." *Id.*

██ We first consider Ileana's argument that the prenuptial agreement is invalid for lack of a knowing and voluntary waiver of her entitlement to marital property. Ileana testified she believed the agreement allowed each party to keep their separate properties in Austria and Guatemala. However, she claimed she did not understand nor was she informed the agreement was a waiver of her rights to property accumulated during the marriage.

Unlike the spouse in *Spiegel,* the record indicates Ileana did not review the agreement with independent counsel before signing. Ileana testified she first learned of the agreement ten months after she arrived in the U.S. and one week before the wedding. Fritz explained the agreement to Ileana in Spanish while at the office of Fritz's attorney. According to Ileana, Fritz explained the agreement was necessary so her son could keep her house in Guatemala should she die and his son could keep his house in Austria if he should die. We find Ileana's version of these events more credible than Fritz's explanation.

Under these circumstances we are unable to conclude Ileana understood the import of what she was signing. We believe her assertion that she was unaware of her rights or that she was forfeiting her rights to property accumulated during the marriage. Ileana has met her burden. We conclude she did not knowingly and voluntarily waive her

rights to a share of property accumulated during the marriage. Accordingly, we affirm the district court's decision on this issue.

### B. Valuation and Property Division.

The trial court valued the marital property as follows:

| | |
|---|---|
| Equity in Waterloo home | $10,000 or $11,000 |
| Equity in Austria home (unknown) | exceeds $10,000 or $11,000 |
| Increase in TIAA–CREF account | $84,000 |

The court awarded each party the property he or she brought into the marriage. The 1994 Toyota Tercel and the home in Austria were awarded to Fritz and the 1989 Honda and the home in Waterloo were awarded to Ileana.

Fritz received all the furniture, appliances, and personal items listed in the attachments to Ileana's "Statement of Affairs" with the exception of a queen-size bed and bedding, the bedroom furniture, a quilt, the red textiles from Guatemala, and the wedding gift crystal glasses. The decree does not assign a value to the household goods. Fritz values the household goods at $2200 while Ileana values them at $5500. He argues the household items awarded to Ileana were acquired by him prior to the marriage and therefore should have been awarded to him.

Ileana lists $12,250 in other miscellaneous accounts that Fritz has not acknowledged. The divorce decree did not mention the accounts, but as part of the property distribution the decree did award $25,000 in cash to Ileana.

Fritz contests the award of $78,200 (which includes her attorney fees) in marital assets to Ileana by the district court. He argues this amount represents nearly ninety percent of what he estimates to be the net worth accumulated during the marriage, or $87,200. Fritz urges an alternative division of the assets of the marriage in which he pays Ileana $17,500 reduced by the temporary support amount of $8750. He also requests that the home in Waterloo be awarded to him.

Ileana disputes Fritz's calculations of their net worth. She estimates the net worth of their marital property at $158,780, excluding the automobiles and personal items already distributed by the court. She claims Fritz attempted to reduce the marital assets by

funneling his earnings into his retirement plan (at a rate of approximately $7000 per year) and the construction of the home in Austria. She further contends Fritz sought to diminish the assets by alleging an unsubstantiated $25,000 debt in connection with a failed business venture. Ileana argues that $30,000 should be included in the marital assets to reflect mortgage payments, approximately $6000 per year, made on the home in Austria during the marriage. Finally, Ileana requests that she be awarded furniture valued at $3000 and an additional $10,000 from the TIAA–CREF retirement plan in order to arrive at a more equal division of the actual amount of marital property.

■■■ The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (1991). *See In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App.1983).

We find the values placed on the assets by the trial court to be well within the permissible range of evidence and we will not disturb them on appeal. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973); *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984). No documentation was provided at trial concerning the equity in the Austrian home. Furthermore, it does not appear from the court's order that the alleged $25,000 debt claimed by Fritz was considered in awarding the marital assets. Finally, we concur in the distribution of assets as to the two homes, the household goods and personal items, and also the cash award of $25,000 to Ileana.

■■■ Pension benefits are treated as marital property in Iowa and are properly subject to equitable distribution. *In re Marriage of Mott*, 444 N.W.2d 507, 510–11 (Iowa App. 1989). The appellate courts of this state have devised several schemes for the distribution of pension benefits in a dissolution.

The first scheme is to award a percentage of the benefits already being received. *Id.* The second scheme is to award a lump sum percentage based on the present value of the pension. *Id.* The third is to award a percentage of the pension, as it becomes payable, in the form of periodic alimony. *Id.* The fourth scheme for dividing pension benefits is to award a portion of the pension benefits if and when they accrue. The fourth system differs from periodic alimony in that it awards a portion of the pension benefits in the property division. *Id.*

We agree with the district court's decision to award Ileana part of Fritz's pension. Accordingly, we affirm the district court's award of $28,000 reflecting Ileana's one-third share of the $84,000 benefits accrued during the marriage.

We conclude the trial court made an equitable division of the assets from this brief marriage. Ileana has been provided with the resources necessary for her self sufficiency. Fritz has also received sufficient resources to achieve his retirement objectives.

## III. Temporary Support.

■■■ Fritz argues the temporary support award of $8750 was not supported by the evidence. He cites Ileana's income and the scope of expenses included in the district court award. Specifically, he objects to $2400 of miscellaneous expenses and Ileana's clothing expenses.

The district court found Fritz failed to fulfill his obligations under the March 1994 order by unilaterally terminating payments for food and medical and dental expenses at the end of November 1994. The district court based its award on Ileana's estimated living expenses for the duration of the pretrial separation.

Fritz was undisputedly in arrears as to his support obligation under the terms of the March 1994 order. He offers no justification for failing to obey the court's order other than to state he was out of the country teaching at the time. Furthermore, we find the district court's enumeration of expenses is supported by the record. Accordingly, we also affirm on this issue.

Fritz also argues the temporary support award should be credited against Ileana's property award. *See* Iowa Code § 598.21(1)(h). We disagree. These funds were intended to provide for Ileana's subsistence. She was required to expend nonmarital property to meet marital obligations. It would be inequitable to adjust her award of marital property as Fritz demands.

## IV. Alimony.

Ileana requests that she be awarded $400 per month in alimony until she reaches age 62. She cites her age, lack of employment security, and lack of retirement benefits as factors supporting an alimony award.

Alimony is an allowance to the former spouse in lieu of a legal obligation to support that person. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 437 (Iowa 1981). When determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against the relative needs of the other." *In re Marriage of Miller*, 524 N.W.2d 442, 445 (Iowa App.1994); *In re Marriage of Estlund*, 344 N.W.2d at 281.

Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976); *Miller*, 532 N.W.2d at 162; *In re Marriage of Whelchel*, 476 N.W.2d 104, 110 (Iowa App.1991). The discretionary award of alimony is made after considering the factors listed in Iowa Code section 598.21(3)(1995). *See In re Marriage of Hayne*, 334 N.W.2d 347, 350 (Iowa App. 1983). Alimony may be used to remedy the inequities in a marriage and to compensate a spouse who leaves the marriage at a financial disadvantage. *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993); *In re Marriage of Earsa*, 480 N.W.2d 84, 86 (Iowa App.1991). Following a marriage of long duration, we have affirmed awards of both alimony and substantially equal property distribution, especially where the disparity in earning capacity has been great. *In re Mar-*

*riage of Geil*, 509 N.W.2d at 742; *In re Marriage of Hitchcock*, 309 N.W.2d at 438.

The parties were married for five years and lived together for only four of these years. Moreover, we note Ileana holds an advanced degree. She does not need additional education to achieve self-sufficiency. Ileana's income is sufficient for her subsistence. Moreover, she has been awarded a substantial amount of property. Alimony is therefore unnecessary.

## V. Attorney Fees.

Ileana was awarded $750 in attorney fees. On appeal she requests an award of $3000 in trial attorney fees given the amount of preparation and court time required in her case and also the disparity between the income of the two parties. Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Miller*, 524 N.W.2d at 445. To overturn an award, the complaining party must show the trial court abused its discretion. *Id.* We find no abuse of discretion in the trial court's decision and accordingly, affirm the award of $750.

Ileana also requests $2500 appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial position. *In re Marriage of Gilliam*, 525 N.W.2d 436, 439 (Iowa App.1994). Although Ileana has the resources available to pay her attorney fees, she has nevertheless successfully defended the district court's decision on appeal. We award her $1000 for appellate attorney fees.

**AFFIRMED.**