# IN THE COURT OF APPEALS OF IOWA

No. 22-1217
Filed February 8, 2023

IN RE THE MARRIAGE OF BARBARA DARLENE KOSCIELSKI
AND GERALD WILLIAM KOSCIELSKI

Upon the Petition of
**BARBARA DARLENE KOSCIELSKI,**
    Petitioner-Appellant,

And Concerning
**GERALD WILLIAM KOSCIELSKI,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marshall County, James Ellefson,

Judge.

A party in a marriage dissolution challenges the enforceability of a

prenuptial agreement. **AFFIRMED.**

C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellant.

James L. Sines of Ackley, Kopecky & Kingery, Cedar Rapids, for appellee.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Barbara Koscielski appeals the portion of the district court dissolution decree that found her prenuptial agreement with Gerald Koscielski to be enforceable. She claims she did not enter into the agreement voluntarily and knowingly. She also contends the asset disclosure in the agreement was inadequate. We find the agreement to be enforceable and affirm.

## I.      Background Facts & Proceedings

Barbara and Gerald married in July 4, 1991, in Las Vegas. At the time of their marriage, Gerald was about forty-eight years old and Barbara was about forty-five years old. The marriage was Gerald's second and Barbara's third marriage.[1] Barbara filed a petition for dissolution on August 5, 2021.

On June 27, 1991, seven days prior to their wedding and three-to-five days prior to leaving for Las Vegas, Gerald called Barbara to his attorney's office to sign some papers. Barbara was unaware what the papers were concerning but assumed such related to the upcoming marriage. The parties had not discussed the idea of a prenuptial agreement prior to the meeting. When she arrived, she was presented with a four-page prenuptial agreement. The substance of the agreement was that the parties would each keep the property they owned prior to the marriage. Gerald's property at the time, as reported by the agreement, included a time-share in a condominium at Lake Okoboji, life insurance, a 187-acre farm, a vacant lot, and an apartment building. Barbara's property included household furniture, her pension and retirement fund, and life insurance. The

---

[1] Both parties have adult children from prior marriages.

agreement did not contain values for any of the property. At the time of the dissolution, the primary asset the parties contested was the proceeds from the sale of the 187-acre farm.[2]

Barbara testified that she did not read the agreement prior to signing it. She further testified that she asked if she should obtain her own attorney, but Gerald's attorney indicated she did not need to because the agreement would only be in effect for two years. The written document did not include language concerning such a time limitation. Barbara signed the agreement without consulting her own attorney.[3] The meeting lasted about ten-to-fifteen minutes.

The district court found the prenuptial agreement was enforceable, entitling Gerald to the proceeds from the farm sale. In reaching that conclusion, the court expressly found Barbara's testimony regarding what occurred in the lawyer's office lacked credibility. In particular, the court highlighted her changing story, the lack of any textual provisions suggesting a time-limit on the contract's enforceability, and the fact that it occurred thirty years ago. Additionally, the court noted that Barbara did not present any testimony or evidence that any of Gerald's assets were unknown to her at the time the prenuptial agreement was signed. The court

---

[2] The property sold on contract in 2017 for the pre-tax amount of $750,000.

[3] Barbara was represented by the same attorney for her two previous dissolution of marriage cases, and the same attorney filed the petition in the instant action.

did not give Gerald's testimony concerning the prenuptial agreement any weight.[4]

Barbara appeals. [5]

## II.     Standard of Review

We review equity proceedings de novo. *In re Marriage of Gonzalez*, 561 N.W.2d 94, 96 (Iowa Ct. App. 1997). We give weight to the district court's findings regarding the credibility of witnesses because the court had the opportunity to view their testimony firsthand. *Id.*

## III.     Discussion

Barbara challenges the enforceability of the prenuptial agreement. In particular, she claims she did not enter it knowingly and voluntarily. She also asserts the disclosure of assets was inadequate.

"As a general rule, prenuptial agreements are favored and should be construed liberally to carry out the intentions of the parties." *Id.* "[W]e construe and treat antenuptial agreements in the same manner as we do ordinary contracts." *In re Marriage of Christensen*, 543 N.W.2d 915, 918 (Iowa Ct. App. 1995). We review the enforceability of an agreement by viewing the circumstances when the agreement was executed, not when a party seeks to enforce it. *Gonzalez*, 561 N.W.2d at 96.

---

[4] At the time of the trial, both parties—Barbara, then approximately seventy-six years old, and Gerald, approximately eighty years old—were in extremely poor health. Barbara was receiving twelve hours of medical treatment per day and Gerald was living in a care facility. The district court noted in the decree, for example, that during trial testimony, Gerald was unable to recall his wife's first name.

[5] Gerald filed a cross-appeal. However, his briefing stated that he was dismissing his cross-appeal.

Because the parties were married in 1991, the statutory amendments found in Iowa Code chapter 596 (2021) are not applicable, as that chapter does not apply to premarital agreements signed before January 1, 1992. *See* Iowa Code § 596.12. The Iowa Supreme Court explained our approach to deciding the enforceability of pre-chapter 596 prenuptial agreements as follows:

> The person challenging the agreement must prove its terms are unfair or the person's waiver of rights was not knowing and voluntary. Applying the standard of our recent cases, we hold the terms of an agreement are fair when the provisions of the contract are mutual or the division of property is consistent with the financial condition of the parties at the time of execution. Of course, the affirmative defenses of fraud, duress and undue influence are also available to void a prenuptial agreement, as with any other contract.

*In re Marriage of Spiegel*, 553 N.W.2d 309, 316 (Iowa 1996), *superseded by statute on other grounds as recognized by In re Marriage of Shanks*, 758 N.W.2d 506, 512 (Iowa 2008). The concept of fairness includes procedural fairness, meaning the contract was "fairly, freely and understandingly entered into." *Id.* at 314 (citation omitted). Procedural fairness requires "a full disclosure or independent knowledge of the nature and extent of the parties' assets." *Id.* at 315.

Barbara first claims she did not enter into the contract knowingly and voluntarily. In support of her claim, she contends she did not read the contract and was told it would expire after two years, and she highlights the short time frame between being presented the contract and her wedding.

We conclude that Barbara entered into the agreement knowingly and voluntarily. First, temporal proximity to the wedding is insufficient to invalidate a prenuptial agreement. *See id.* at 318. Her busy schedule at the time does not render the agreement involuntary—she still made the choice, absent any pressure

by Gerald, to sign the agreement. In fact, Barbara was clear in her testimony that she did not feel intimidated or pressured by Gerald or his attorney. Similarly, her decision not to read the contract was her own, as was her decision not to seek an attorney. Contrary to her contentions, seven days, even when busy with other obligations, is ample time to seek an attorney to review the agreement. *Compare In re Marriage of Elam*, No. 03-0221, 2004 WL 370247, at *2 (Iowa Ct. App. Feb. 27, 2004) ("Even if Ed had only seen the agreement the day prior to the wedding, as he claims, such would be insufficient, standing alone, to invalidate it."), *with In re Marriage of Maifield*, No. 03-0326, 2004 WL 61108, at *2 (Iowa Ct. App. Jan. 14, 2004) (finding an agreement that was "couched in legalistic terms and would not necessarily be understandable to a lay person," which was presented the night before the wedding while the spouse was entertaining guests, "provided no meaningful opportunity to seek counsel" and was therefore unenforceable).

We defer to the district court's credibility assessment as it relates to Barbara's contention that she was told the agreement would only last two years. *See Gonzalez*, 561 N.W.2d at 96. It is also well supported by the record. Barbara acknowledged she gave different answers during her testimony at trial and her deposition testimony as to the length of time she believed the agreement would be enforced. A quick read of the short agreement would dispel any notion that it only was enforceable for a short time. And the signing happened thirty years prior to trial, making suspect a clear memory of what was said. Barbara entered the agreement knowingly and voluntarily.

Barbara also contends the agreement is unenforceable because there was not a full disclosure of assets. It is true that the agreement only listed the parties' major assets without any attempt at placing a value on them. However, multiple considerations lead us to decide the agreement was at least minimally adequate. First, "[w]e have never required that a party have precise valuations of the other's assets; a general knowledge of the true nature and extent of the other's property is sufficient." *Spiegel*, 553 N.W.2d at 317. Barbara testified that the property listed in the agreement was accurate, and that she knew about Gerald's farm, apartment, vacant lot, and timeshare prior to signing the agreement. *See In re Marriage of Crawford*, No. 04-0770, 2004 WL 2805269, at *3 (Iowa Ct. App. Dec. 8, 2004) (finding an asset disclosure adequate despite the omission of all values because the party knew of the properties involved). Second, despite bearing the burden of establishing the agreement's unenforceability, Barbara did not identify any property that should have been included in the agreement but was omitted. Based on this record, we cannot say the asset disclosure was inadequate.

We determine Barbara entered into the prenuptial agreement knowingly and voluntarily. We also determine the disclosure of assets was adequate. Accordingly, we affirm the decision of the district court.

**AFFIRMED.**