**IN THE COURT OF APPEALS OF IOWA**

No. 23-0230
Filed May 22, 2024

IN RE THE MARRIAGE OF RON JAMES EDWARDS
AND KATRINA SHAE EDWARDS

**Upon the Petition of**
**RON JAMES EDWARDS,**
     Petitioner-Appellant,

**And Concerning**
**KATRINA SHAE EDWARDS,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Dallas County, Terry Rickers, Judge.


     A husband appeals the spousal support award and valuation of a marital

asset in the decree dissolving his marriage. **AFFIRMED AS MODIFIED**.


     Matthew G. Sease and Delaney J. Kozlowski of Sease & Wadding, Des

Moines, for appellant.

     Sierra Meehan Strassberg and Todd E. Babich of Babich Sarcone, P.L.L.C.,

Des Moines, for appellee.


     Considered by Bower, C.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Ron Edwards appeals the decree granting dissolution of his marriage to Katrina Edwards. Ron argues the district court erred in the amount and duration of spousal support awarded to Katrina and asserts the district court improperly valued a joint checking account. Katrina defends the dissolution decree and requests appellate attorney fees. After applying developments in case law that post-date the decree, we affirm the spousal-support award as modified and deny Katrina's request for attorney fees.

## I.        Background Facts and Proceedings

Katrina and Ron married in October 2008 and had three children together. At the time of trial, the three children—born in 2009, 2011, and 2016—lived with Katrina in West Des Moines.

Ron is an attorney and worked for John Deere during the marriage in various positions, first in the Quad Cities and eventually in Des Moines. His positions at John Deere fully supported the family. But those positions also required Ron to do extensive traveling—at one point as many as ten days of international travel a month. Ron also went to various company dinners and "charitable events," which Katrina attended with him. In 2021, Ron accepted a job with Nike, Inc. in Portland, Oregon. With this new role, the district court found Ron's annual earning capacity was $258,000, with current salary of $215,000 per year ($20,716 gross per month).

Meanwhile, Katrina was the primary caregiver for the children; she did not work outside the home during the marriage. Before having children, Katrina had attended classes for a master's degree in school counseling. But after the birth of

their first child, the couple agreed Katrina would stay at home to raise the children instead of completing her degree. Among other duties, Katrina cared for the couple's children and home when Ron went on frequent business trips, she set up the children's schooling and doctors' appointments when the family moved to Des Moines for Ron's job, and she attended various pre-natal medical appointments without Ron while pregnant with the couple's second and third children. Overall, Katrina had been very involved with the children's schooling and extracurriculars.

Ron petitioned to dissolve the marriage in 2021. The district court issued a dissolution decree granting Katrina physical custody and care while Ron received visitation rights. The court also ordered Ron to initially pay $1,946 per month to support the three children. The court ordered Ron to pay Katrina hybrid transitional and rehabilitative spousal support but then, following a motion to enlarge or amend by Ron, reduced the amount to $3,000 per month for three years and then $2,000 per month for another five years. The court based the support order on the couple's marital lifestyle, Katrina's role as primary caregiver, and Ron's significant income and ability to pay.

The district court also divided the parties' marital assets. The court evenly distributed among other items: a Portland home, proceeds held from the sale of a West Des Moines home, Ron's John Deere Savings and Investment Plan, Ron's John Deere pension, Ron's Nike savings- and-profit-sharing plan, Fidelity investment accounts, Ron's Nike restricted stock units, and a Wells Fargo checking account with a disputed value. The court found the disputed checking

account to be worth $182,345.37 and split it down the middle so each party received $91,172.68, though Ron contests the account's value.  Ron appeals.

## II.      Standard of Review

A dissolution-of-marriage proceeding is heard in equity, and we generally review the resulting decree de novo.  *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).  "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us."  *Id.*  "We will disturb the trial court's order only when there has been a failure to do equity."  *Id.* (internal quotation marks and citation omitted).

## III.     Discussion

On appeal, Ron disagrees with the amount and duration of the spousal-support award.  He also contests the valuation of the parties' Wells Fargo checking account at the time of the division of assets.  Katrina defends the district court order and requests appellate attorney fees.

### A.      Spousal Support to Katrina

Ron first contends the district court erred in determining the length and amount of Katrina's spousal support.  While he concedes that an award is appropriate, he requests we reduce the award to $1,500 per month for three years. Katrina defends the award as ordered by the court.

An award of spousal support is not an absolute right, and any award instead depends on the circumstances of a case and the factors listed in Iowa Code section 598.21A (2021).  *See In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005).  Our courts balance the ability of a spouse to pay support against the needs of the requesting spouse, while also considering the standard of living the

parties enjoyed during the marriage. *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa Ct. App. 1995). On appeal, we will not disturb an award unless the district court failed to do equity. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 541 (Iowa 2022).

Historically, Iowa courts recognized three types of spousal support with different goals—rehabilitative, reimbursement, and traditional. *Id.* at 539 (recognizing some cases call for hybrid awards to meet multiple goals). But our supreme court recently recognized a fourth type of spousal support: transitional. *Id.* at 541–42 (recognizing "a need for short-term support in some cases to help 'transition from married life to single life'" to address inequities not otherwise met under the three other types of support (internal citation omitted)).

Here, the district court found Katrina was entitled to spousal support in the amount of $3,000 per month for three years, followed by $2,000 per month for five years after. The court categorized the award as a mix of transitional and rehabilitative, finding traditional and reimbursement support were not appropriate. The district court's ruling was entered before the supreme court clarified the parameters of transitional support in *In re Marriage of Sokol*, distinguishing it from the other recognized types and explaining how it may fit in a hybrid award. *See* 985 N.W.2d 177, 186 (Iowa 2023).

Following *Sokol*, we turn to the award issued here and do our best to modify it in light of controlling case law. We explore all categorizations except for traditional—which neither party urges and we find inapplicable. And we consider last whether the total hybrid award does equity to the parties. *See Pazhoor*, 971 N.W.2d at 541.

### 1. Transitional support

Transitional spousal support is appropriate to address "short-term liquidity needs associated with splitting one household into two" and "generally should not exceed one year in duration." *Sokol*, 985 N.W.2d at 187. This type of support "is not needed when the recipient has sufficient income or liquid assets to facilitate the change to single life." *Pazhoor*, 971 N.W.2d at 545. We agree with the district court that Katrina should have aid in her transition from married to single life. While Katrina received a sizable award from the division of the parties' assets, not all of the award is liquid to aid in her transition. And Ron moved across the country with most of their household furniture and personal property, requiring Katrina to locate and furnish new housing for herself and the children. The need for transitional support is further evidenced by Katrina requiring a loan from her parents to secure housing once Ron left.

We understand the district court's award of eight total years of hybrid spousal support to include five years of transitional support and three years of rehabilitative support. *See Sokol*, 985 N.W.2d at 186 ("[T]here is nothing in our case law that requires us, or any other court in this state, to award only one type of support. This does not mean, however, that courts are free to award spousal support not corresponding to any recognized category of support." (internal citations and quotation marks omitted)). That duration is not appropriate under the newly defined parameters of transitional support. *See id.* at 187 (limiting transitional spousal support to one year). On our independent review, we find Katrina is entitled to transitional support of $3000 per month for one year.

## 2. Rehabilitative support

"Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (citation omitted). The goal of rehabilitative support is self-sufficiency, so "the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses." *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989).

At the time of the decree, the district court found Ron's earning capacity was $258,000 and Katrina's $15,080. Katrina took on the role of primary caregiver to the couple's children and home for more than twelve years. And while she has a bachelor's degree in theater and completed most of a master's program in school counseling, given the long dormancy period and location of the school, Katrina would likely need to either restart her master's program or start in a new program to increase her earning capacity, enter the workforce, and become self-supporting. Based on these facts, we agree with the district court that Katrina is entitled to rehabilitative support. *See Sokol*, 985 N.W.2d at 185–86. We also find the amount of $3000 per month does equity as it will enable Katrina to pursue education and other self-improvement necessary to become self-supporting and attain a somewhat similar lifestyle to what she enjoyed while married to Ron.

We recognize it takes a significant amount of time to apply and get accepted into many graduate programs, and so the rehabilitative support will start when the

transitional support ends. As for the duration of rehabilitative support, we conclude it should be long enough to allow Katrina to undergo a period of re-education and re-training required to become economically independent to support a similar lifestyle she enjoyed during the marriage. The district court found that Katrina "should be in a position to enhance her ability to become self-supporting after three years." We consider this finding on our de novo review of Katrina's past education and current circumstances and agree the duration of Kariana's rehabilitative support should be a minimum of three years. This award of rehabilitative support tracks recent decisions from our court that involve couples with disparate earning capacities. *See, e.g.*, *In re Marriage of Godbolt*, No. 22-1550, 2023 WL 4759454, at *3–5 (Iowa Ct. App. July 26, 2023) (affirming a hybrid award of traditional and rehabilitative spousal support when the parties' earning capacities were $215,000 and $19,771, respectively).

### 3.    Reimbursement support

The district court found reimbursement spousal support was unavailable because Ron was already an attorney when he and Katrina married. But reimbursement support should be determined based on all the "economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other." *In re Marriage of Anliker*, 694 N.W.2d 535, 541 (Iowa 2005) (citation omitted); *Cf. In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993) (weighing a spouse's sacrifice of economic opportunities in awarding support). In light of this precedent, we find the district court took an overly myopic view of reimbursement support. Ron and Katrina agreed she would set aside the completion of her master's program to raise their children and take care of the

household, which required Katrina to sacrifice educational opportunities, professional experiences, and potential retirement benefits. *See In re Marriage of Singer*, No. 02-1770, 2003 WL 22807034, at *3 (Iowa Ct. App. Nov. 26, 2003). This arrangement enhanced Ron's earning capacity—granting him freedom to attend various corporate events, serve on multiple charity boards, relocate the family from the Quad Cities to Des Moines, and partake in extensive travel for work across the country and abroad. *See In re Marriage of Ocean & Osborne*, No. 22-1664, 2024 WL 697757, at *5 (Iowa Ct. App. Feb. 21, 2024); *In re Marriage of Lee*, No. 10-0948, 2011 WL 227573, at *7 (Iowa Ct. App. Jan. 20, 2011). We find Katrina deserves a fraction of Ron's earning capacity as reimbursement support in the form of $1,500 per month for four years after the rehabilitative support has ended. *See Ocean & Osborne*, 2024 WL 697757, at *5 (retooling spousal support to include reimbursement award on appeal); *see also Singer*, 2003 WL 22807034, at *3 (same).

### 4.    Total hybrid award

Ron challenges the overall amount of the award as inequitable based on Katrina's expenses and his ability to pay. Ron argues that, between the undisputed child support and the spousal support award, he would be paying Katrina more than half of his monthly take home pay, which he calculates to be $8726 based on pay stubs offered into evidence. But Ron does not challenge the district court's finding his gross monthly income was $20,716. *See Gust*, 858 N.W.2d at 411–12 (discussing appropriate spousal support in light of substantial disparity in earning capacity). Accordingly, the combined support award is less than 25% of Ron's gross income—the spousal support at most less than 15%—

and for only a limited time. We are not persuaded by Ron's argument about inequity.

We find the district court's general award of spousal support was proper based on recent supreme court case law. *See Pazhoor*, 975 N.W.2d at 541. But for the reasons discussed above—including our recategorization in light of *Sokol*— we modify the award. We order Ron to pay Katrina $3000 monthly for four years, then $1500 a month for another four years based on a hybrid of transitional, rehabilitative, and reimbursement support. *See Becker*, 756 N.W.2d at 827; *see also In re Marriage of Stenzel*, 908 N.W.2d 524, 531 (Iowa Ct. App. 2018) (discussing how "types of spousal support . . . are not mutually exclusive" and that fixation on "the moniker" can sometimes lead to "nothing more than a 'red herring'" (citation omitted)). We recognize the total amount of spousal support Katrina will receive under this scheme is marginally less than what was awarded by the district court, but *Sokol* and other precedent compel this recategorization, and we conclude the award does equity on this record.

### B.    Wells Fargo Account

Ron also challenges the district court's valuation of the parties' joint Wells Fargo checking account at $182,345.37. He argues the court disregarded multiple outstanding, uncashed checks that had been written from the account in the amount of $94,580 to cover tax obligations for the years 2020 and 2021, as well as outstanding checks to cover attorney's fees and flights. According to Ron, these unaccounted-for checks mean the court overvalued the account by more than $100,000.

Courts divide marital property equitably, considering the factors outlined in Iowa Code section 598.21. *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "An equitable division is not necessarily an equal division," and what qualifies as an equitable distribution depends on the circumstances of each case. *Id.* The marital property's value is generally determined as of the trial date. *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). And in reviewing the trial court's determination, we will not disturb the valuation of an asset if "it is within the range of permissible evidence." *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013).

After the court entered its decree, Ron filed a motion to enlarge, amend, and/or reconsider alleging the court erred in their valuation of the joint account. He asked the court to reduce the account's valuation to reflect the balance of the outstanding checks that had been written to cover marital obligations. But if the court was unwilling to do so, Ron alternatively requested that the ruling be amended to award the entire 2021 tax refund to him. Awarding Ron that tax refund would represent the same funds paid with the outstanding Wells Fargo check, which Ron argued would restore equity to the asset distribution. In short, Ron thought the award would be equitable if the court granted either of his requests. And the court granted Ron's alternative request, awarding him the couple's 2021 income tax return.

Ron now asks that we re-consider the district court's valuation of the Wells Fargo account that was split equally between him and Katrina, indicating a lack of satisfaction with the result he requested. Assuming without deciding this error is properly before us, Ron did not offer any valuation evidence related to the

uncashed, outstanding checks to prove their value. Nor did he provide evidence of the value of the 2021 tax return to prove that the division of property was inequitable. Thus, we cannot say that the award exceeded the permissible range of evidence or that there was a failure to do equity. *See McDermott*, 827 N.W.2d at 679. We affirm the personal property award.

### C.    Appellate Attorney Fees

Katrina requests appellate attorney fees. "An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial position." *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997). In making this determination, we consider the needs of the requesting party for an award of fees, the ability of the other party to pay attorney fees, and whether the requesting party had to defend the trial court's decision on appeal. *McDermott*, 827 N.W.2d at 687.

Katrina argues she should receive appellate attorney fees because Ron has significantly greater income and questions the merits of the issues raised on appeal. Still, Katrina has sufficient means to pay her attorney fees. We decline to award appellate attorney fees.

### IV.    Disposition

We affirm the district court's spousal support award as modified and affirm the valuation of the Wells Fargo checking account. We also decline to award any appellate attorney fees.

**AFFIRMED AS MODIFIED**.