# IN THE COURT OF APPEALS OF IOWA

No. 24-0476
Filed February 19, 2025

**DANIEL R. STEPHENS,**
　　　Petitioner-Appellee,

**VS.**

**TIANA R. TIAO,**
　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A mother appeals from a custody decree placing physical care with the father and ordering her to pay child support. **AFFIRMED AND REMANDED TO DETERMINE ATTORNEY FEES.**

Jonathan Law of Mumma & Pedersen, Jefferson, for appellant.

Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellee.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Tiana Tiao appeals from a ruling placing physical care of her minor child with the father—Daniel Stephens—and the related calculation of child support. She argues physical care should have been placed with her and that the district court should have determined Daniel's self-employed income at a higher amount. Daniel seeks $3000 in appellate attorney fees. We affirm and remand for the district court to order Tiana to pay Daniel's reasonable appellate attorney fees in an amount not to exceed $1500.

### I.  Background Facts and Proceedings

Tiana and Daniel started dating in 2009 and had a child together in 2013. They broke up in late 2016 and agreed on a roughly equal shared-care schedule that worked for both of their professional obligations. They followed this arrangement until they switched to a full-week-on/full-week-off schedule after the child transferred to Rock Creek Elementary School in 2019. The change to Rock Creek came as a surprise to Daniel—he testified he learned about it from the school, not Tiana. After an informal mediation by Daniel's mother, Daniel and Tiana agreed to stick with Rock Creek, but "no more switching schools or nothing [and the child would] remain there." This roughly-equal schedule lasted until the custody proceedings.

In early 2023, Daniel learned from the child that Tiana was moving to Panora—about an hour and fifteen minutes drivetime from his home and an hour drivetime from the Rock Creek school. Tiana said she was planning to tell Daniel but hadn't gotten around to it before the child told him. She also testified that she did not originally intend to permanently move to Panora, but once she got there,

she just "decided to stay" instead of looking for property elsewhere. When Daniel asked Tiana about the move, Tiana said she was "leaving things 100% up to" their then ten-year-old child to choose schools and living arrangements. And she told Daniel she had signed the child up for summer activities in Panora. Daniel was concerned about the distance, the lack of communication, Tiana's overall instability, and that it would be the child's third school in six years.

After the temporary-matters order placed physical care with Tiana, Daniel believed the child was struggling with separation from him and thought her mental health had been affected. He suggested to Tiana that the child might benefit from seeing a therapist and explained he had suggested therapy "multiple times" dating back to 2017 or 2018. Tiana did not engage with the suggestion until essentially the time of trial, and she blamed an insurance snafu for the delay. Under questioning from the court, the insurance explanation became muddled at best.

As of trial, Daniel lived in a house in Carlisle with his wife, their shared biological child, and four stepchildren. The child at issue in this appeal had a good bond with her siblings, enjoyed spending time with them, and shared a room with one of her stepsisters while there. Daniel worked full-time as a self-employed welding contractor: in 2022, he grossed just under $69,000, and in his proposed child-support guidelines he estimated his relevant net income at approximately $34,000.

Tiana lived in Panora with her significant other; they had been living together for less than a year. At Tiana's, the child had her own bedroom and no human siblings—though there were four family dogs. Tiana worked as a hairstylist in Ankeny but had a business venture planned with her significant other in Panora

and expected to change employment to that in the future. Tiana and her significant other testified that the building for the venture was under construction as of trial and they were "working on" forming an LLC.

Daniel sought physical care of the child but also told the court he would be open to working out a shared-care arrangement like one-week-on/one-week-off so long as he had some help with transportation, such as Tiana sometimes meeting him halfway. Tiana sought physical care and generally opposed a shared-care arrangement "due to the distance" between the parties' homes—but she also expressed a tepid belief shared care might work if there was less burden on her. Both parents mostly spoke well of the other's parenting and bond with the child. But their communication became more fraught leading up to trial.

The child was doing well overall in school. And she loved both her parents very much. The mental-health concerns identified by Daniel were largely corroborated by the child and family reporter (CFR). The child told the CFR she missed her siblings and Daniel when she couldn't see them, and said she wished everyone could go back to the equal-parenting schedule they had before the move. The child said that, despite the drive, she preferred the past shared-care arrangement. Consistent with the child's wishes, the CFR recommended shared physical care with a week-on/week-off arrangement. And the CFR recommended that, if the court found shared care unworkable, the parent without physical care should receive liberal visitation.

The district court found shared physical care was "not feasible and ultimately not in the child's best interests," largely due to the drivetime between the parents' homes. In selecting a parent for physical care, the court focused on

whether each parent could support the other's relationship and which parent provided a more stable home. The court was critical of Tiana's unilateral decisionmaking and poor communication regarding the move; her prioritization of her relationship and needs over the child's; and her lack of candor or honesty. The court made a few specific adverse credibility determinations regarding Tiana, finding her "not credible" with regard to the insurance excuse for the delay in therapy and that it was "intentional to prevent any therapy to begin until after trial." The court also opined that the sincerity of Tiana's attempt to find housing closer to Des Moines was "less than clear on the present record." As for the business venture in Panora the court described the details as "somewhat sketchy" and expressed doubts as to its stability or viability.

In the court's words, "Everything behind [Tiana's] decision to relocate to Panora appears to have been motivated by her own needs, not those of [the child]." In contrast, the court found Daniel had consistently placed the child's needs ahead of his own, his home offered more stability, and placement with him would allow Tiana to have more time with her siblings. The court granted Daniel physical care and ordered liberal visitation for Tiana.

In calculating Daniel's income for purposes of child support, the court used his 2022 income less depreciation and an average of Tiana's income from 2019 through March 2023. These figures worked out to $24,122 in income for Daniel, and $52,669 for Tiana based on her reported figures.

Tiana appeals, seeking physical care and modification of the child-support calculation.

## II.     Standard of Review

"Our review of matters involving child custody and child support is de novo." *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Thorpe*, 949 N.W.2d at 5.

## III.     Discussion

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Although this action is governed by Iowa Code chapter 600B (2023), we look to section 598.41 for guidance. *See* Iowa Code § 600B.40(2) (providing "section 598.41 shall apply" to chapter 600B proceedings). In section 598.41, the General Assembly set forth a series of nonexclusive factors to guide our consideration of child custody. Our case law sets forth similar additional factors. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

Tiana advocates on appeal for either physical care to be placed with her or for us to reverse and order shared care. The exact rationale behind her argument is a bit hard to discern from the briefing. In any event, after giving appropriate deference to the district court's credibility findings regarding Tiana's conduct and her motivations, we see no basis for reversing the physical-care determination. Although Tiana now asks for shared care, her reluctance below casts doubts on

the request and instead supports the district court's conclusion that the driving distance between parents rendered shared care unworkable. *See* Iowa Code § 598.41(3)(h) (directing the court to consider "[t]he geographic proximity of the parents" in making a custody determination); *Garland v. Dunn*, No. 21-0415, 2021 WL 5106447, at *3 (Iowa Ct. App. Nov. 3, 2021) (collecting cases and coming to a similar conclusion with parents one hour apart). We also generally agree with the district court's conclusion that Daniel is better able to minister to the child's wellbeing, offers a more stable home environment, and is more likely to support the child's relationship with Tiana. We expressly reject Tiana's argument that her moving the child to a new school district without Daniel's agreement inures to her benefit, as she thinks it would be more stable to continue in that new school district. In short, we affirm that, because shared care was unworkable, placing physical care of the child with Daniel is in the child's best interests.

Next, Tiana challenges the child-support calculation in some fashion. This is the entirety of her appellate argument:

> The Appellant hereby incorporates the Statement of Facts set out above as if fully set forth herein. Tiana asks that the Court, if it does not find that she should have primary physical care of [the child], amend the child support amount.
> The District Court erred in not using Daniel's income on his own child support worksheet.

We find this claim waived for failure to cite legal authority. *See* Iowa R. App. P. 6.903(2)(a)(8)(3); *Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."). But we note that, even if the issue was properly

presented, we are aware of no authority that binds a district court to a party's child-support worksheet. The court was tasked with finding facts related to child support, and it did so based on the record evidence.

Last, Daniel asks for appellate attorney fees in the amount of $3000. "An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial position." *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997). In making this determination, we consider whether the requesting party prevailed on appeal, the needs of the requesting party, the ability of the other party to pay attorney fees, and whether the requesting party had to defend the trial court's decision on appeal. Iowa Code § 600B.26; *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). Unfortunately, Daniel's attorney did not file a fee affidavit with our court, so we have no way of evaluating whether his request is reasonable. *See In re Marriage of Samuels da Fonseca Silva*, __ N.W.3d ___, ___, 2024 WL 4370049, at *5 (Iowa Ct. App. 2024) (on our strong preference for attorneys to file fee affidavits). In our discretion, we order Tiana to pay Daniel's appellate attorney fees in a reasonable amount not to exceed $1500, determined by the district court upon review of an attorney-fee affidavit and any other information the court believes appropriate.

**AFFIRMED AND REMANDED TO DETERMINE ATTORNEY FEES.**