**IN THE COURT OF APPEALS OF IOWA**

No. 24-2035
Filed October 29, 2025

IN RE THE MARRIAGE OF JAMES B. ABBIEHL
AND KAYLA S. ABBIEHL

Upon the Petition of
JAMES B. ABBIEHL,
        Petitioner-Appellee,

And Concerning
KAYLA S. ABBIEHL n/k/a KAYLA S. EASTWOOD,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Kurt L. Wilke,

Judge.


        A parent appeals the district court's denial of custody modification.

**AFFIRMED.**


        Dani L. Eisentrager of Eisentrager Law Office, Eagle Grove, for appellant.

        James B. Abbiehl, Fort Dodge, self-represented appellee.

        Jessica L. Morton of Bruner, Bruner, Reinhart & Morton, LLP, Carroll,

guardian ad litem for minor children.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

Kayla Eastwood—formerly Abbiehl—appeals the district court's denial of her petition to modify the physical care, visitation, and support of her children with James Abbiehl. We affirm the district court's rulings and deny Kayla's request for appellate attorney fees.

## I.    Background Facts and Proceedings

In 2017, Kayla and James dissolved their four-year marriage. The pair have two minor children, born in 2012 and 2014. The parties stipulated to joint legal custody and shared physical care. Rather than a set schedule, the parenting plan was to "evenly divide each week with the days and times to be agreed upon by the parties." Because of James's work schedule, the children were generally with each parent three days a week and alternating Wednesdays, but the exchange times/days would vary depending if James was working days or nights that week. The parties maintained this schedule even after James left that position. This appeal arises from Kayla's December 2023 petition for modification seeking physical care of the children. James's answer requested maintaining shared physical care with a change to the parenting schedule.

Kayla and James successfully co-parented until late 2022, even sharing holidays on occasion. According to Kayla, she found out James had complained at a party about paying child support, and she blocked him on social media. James said it was a misunderstanding, and Kayla should have talked to him and his current wife before blocking them. However, the parties still communicate about the children and exchanges via text messages and phone calls. Kayla testified she continued to inform James about scheduled medical appointments and school

related activities, but James would not notify her when he scheduled things. James testified Kayla made herself the primary contact so she would be contacted for all appointments, not him.

Both parties maintain homes in Fort Dodge with their new spouses and blended families. James's wife is often the one caring for the children when they are at his house. Kayla and James agreed the children need more stability in the parenting schedule. At trial, each parent blamed the children's anxiety and concerning behaviors on the other parent's actions following the communication breakdown. Kayla claimed James yells at the children and that the younger child reported James had hit him.

On the recommendation of the children's guardian ad litem (GAL), the children spoke with the judge in chambers. The older child talked about her close relationships with her step- and half- siblings at both houses. She felt safe at both parents' homes and "would miss the other parent a lot" if away from either for longer periods of time. The younger child explained the current parenting schedule was confusing and he wasn't sure where he was on which days. But he said he liked being able to "spend equal time together." He also said he felt safe at both parent's houses and could talk to either parent if he was sad or scared.

The children's therapist also testified. She noted one child was "very guarded" when talking about home. The other child was anxious about transitioning between homes and conflicts between the parents. Disparaging comments by one parent and spouse about the other parent particularly upset the children. And both children found the schedule of when to switch between the parents' houses "confusing."

After hearing testimony on behalf of both parents, the court denied the petition to modify physical care but ordered a new parenting schedule. The children expressed a desire to continue with joint physical care, and their GAL supported that wish, suggesting alternative shared-care schedules that would minimize the parents' contact with each other. Upon request for enlarged findings, "neither the court [n]or the court appointed GAL found a substantial change of circumstances to warrant the modification that Kayla desired." More specifically, the court found that "while the parties' communication and disposition to each other has suffered[,] such change does not rise to the level of a substantial change of circumstances." Kayla appeals.[1]

## II.     Discussion

"Petitions to modify the physical care provisions of a divorce decree lie in equity," so we review de novo. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted). First, they must prove a substantial change in circumstances since the decree. *Id.* If that threshold is established, the petitioning parent must then "prove a superior ability to minister to the needs of the children." *Id.* "[O]nce custody of children has been fixed it should be disturbed only for the most cogent reasons." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

---

[1] James did not file an appellate brief. *See* Iowa R. App. P. 6.903(3) (permitting an appellee to waive the brief). While the failure to file a brief does not require reversal, "we will not search the record for a theory to uphold the decision of the district court," and we "confine ourselves to the objections raised by the appellant." *White v. Harper*, 807 N.W.2d 289, 292 (Iowa Ct. App. 2011) (cleaned up).

The dispute in this case is whether there was a substantial change in circumstances. To prove this, "the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted). The changed circumstances "must not have been contemplated by the court when the decree was entered, . . . they must be more or less permanent, not temporary. They must relate to the welfare of the children." *Id.* (citation omitted). And if the court denies a request for shared physical care (such as James made), it must make "specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child[ren]." *See* Iowa Code § 598.41(5)(a) (2023).

Kayla offers several circumstances she thinks have substantially and materially changed to merit a change in physical care of the children, including confusion in the parenting schedule, a deterioration in the co-parenting relationship (in part due to James deferring to his new wife), the children's mental health and wellbeing, and what she perceives as deficiencies in James's care.

*Confusing parenting schedule.* Kayla argues James's work schedule—which at the time of the decree resulted in the confusing parenting schedule—has changed, constituting a substantial change of circumstances. While it is apparent from the record that seemingly no one liked the schedule and it was no longer necessary due to James's change in employer, this does not constitute a substantial change in circumstances to support a change in physical care.

But just because it is not a substantial change in circumstances does not mean the confusing parenting schedule had to persist. To change a parenting schedule or visitation provision, the parent bears a "different, less demanding burden" showing "a material change in circumstances" and that the change "is in the best interests of the children." *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009) (citation omitted). And James's schedule change and the consensus among both parents and children disliking the schedule warrants modifying the parenting schedule to one that better supports the best interests of the children. We affirm the district court's modification of the parenting schedule, which offered two alternatives and designated one as a fallback in the event the parents couldn't agree which one to use.

*Breakdown of co-parenting relationship.* Kayla's strongest argument is her claim the co-parenting relationship has deteriorated. She attributes this to her no longer "going above and beyond to facilitate such a relationship . . . for the benefit of the children," and James allowing his new wife to do a lot of the co-parenting.

It is true that "[d]iscord between parents that has a disruptive effect on children's lives is a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care." *Harris*, 877 N.W.2d at 441 (cleaned up). But here the deterioration in the co-parenting relationship does not rise to that level.

James and Kayla (and their respective spouses) appear to have had a very good co-parenting relationship for several years, up until the end of 2022. And even after the fallout between Kayla and James's new wife, James and Kayla have

been able to continue to communicate about the children via short, generally civil text messages and phone calls. And the new, more stable parenting schedule should eliminate what appears to be the most frequent source of conflict between them—when and how to switch care. While their co-parenting could be better, and both parents should exercise more care in what they say about each other where the children can hear, they have not demonstrated the level of discord and dysfunction that would constitute a material and substantial change in circumstances. *Id.*; *see also* Iowa Code § 598.41(3).

*Children's mental health and wellbeing.* Kayla next claims the children's mental health has suffered because of the parents' antagonistic relationship. More specifically, she emphasizes that the children have physical outbursts, exhibit anxious behaviors, and are in counseling, which Kayla argues are all attributable to spending time at James's house.

In contrast, the children's GAL reported to the court that it would not be in the children's best interests to modify the physical-care arrangement. The GAL specifically requested the children testify to make sure the court heard and understood their wishes, not the parents' statements of their wishes. The GAL observed the children were "mostly happy and healthy," with some anxiety "related to the uncertainty about their visitation changing and discord between their parents," recommending the parents engage with a therapist or coach to improve their co-parenting. And the children themselves asked to continue with shared physical care, not wanting to choose between the two families with whom they have bonded. The children's therapist also relayed the children were anxious

about the possibility of physical care changing and the disparaging comments from the parents and spouses about each other.

*Basic needs.* Kayla's last asserted significant change in circumstances is that "James lacks the ability to provide the basic needs for the children." To demonstrate this, she lists James's changes in employment and financial consequences during the transition time and mentions "concern" about whether the children take their medication in his care. The employment changes were made for James's health, and Kayla only cites a single incident where one child's inhaler was forgotten for a sports event. These arguments fail to meet the requirement that a change be "more or less permanent" and affect the children's welfare to be considered a substantial change sufficient to modify physical care. *Harris*, 877 N.W.2d at 440 (citation omitted).

*Appellate Attorney Fees.* Kalya also seeks appellate attorney fees. In a modification action, "the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. "An award of attorney fees on appeal is not a matter of right, but rests within the court's discretion and the parties' financial position." *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997). Considering the merits of the appeal and the parties' abilities to pay, we decline to award Kayla appellate attorney fees.

### III. Disposition

On our review, we agree with the district court that there has not been a substantial change of circumstances in the best interests of the children requiring modification of the shared-physical-care determination. We affirm the district

court's changes to the parenting schedule. And we deny Kayla's request for attorney fees.

**AFFIRMED.**